## CALVIN PROCTER v. ALICE STUART.

INJUNCTION—*Mandatory.*  Where A filed a homestead entry for a tract of
land on May 7, 1889, and B settled upon the same tract on May 8, 1889, and
on May 17, 1889, institutes contest in the local land office, charging A with
being disqualified to enter the land by reason of having entered upon and
occupied a portion of the lands thrown open to settlement by the president's
proclamation dated March 23, 1889, prior to April 22, and subsequent to
March 2, of said year, and A suffers B to continue his settlement upon and
improvement of the land for a period of five years, without objection, *held,*
that a mandatory injunction will not lie to remove B from the land in dispute
pending the final determination of the contest between the parties.

*Error from the District Court of Oklahoma County.*

*J. Milton,* for plaintiff in error.

*J. H. Everest,* for defendant in error.

The opinion of the court was delivered by

DALE, C. J.:   The appellee, Alice Stuart, commenced
an action in the district court of Oklahoma county
against Calvin Proctor on March 5, 1894, asking for a
mandatory injunction against Proctor to compel him to
cease interfering with her possession of the northeast
quarter of section 27, township 13 north, range 1 west.
It appears from the record that Stuart filed her home-
stead entry for the tract of land above described on May
7, 1889, and Proctor on May 17, same year, filed a con-
test against the entry of Stuart, alleging as grounds
therefor that she, Stuart, was disqualified from entering
lands in Oklahoma, by reason of having been in the

Territory prior to April 22, 1889, and subsequent to March 2, 1889; that while Proctor claims to have settled upon the land with his family on April 24, 1889, yet the report of the referee before whom the case was heard finds that his actual settlement upon the land was made May 8, one day after Stuart filed her homestead entry therefor, and also in his findings of facts the referee reports that Stuart has resided upon the land continuously since May 1, 1889, and since said date has made numerous and valuable improvements thereon; that Proctor has since his said settlement continued to reside upon and has improved the land by building a log house, breaking and cultivating about seventeen acres of land, and that he has fenced about twenty-five acres thereof for a pasture. It also appears that about forty acres of the tract has never been cultivated or improved by either Stuart or Proctor; that during all of the time intervening between the date of the filing of the contest and the present time, such contest has been pending either in the local land office or the department of the interior at Washington, some of the decisions being in favor of the contestant and others in favor of the contestee. At the date this suit was instituted such contest was undetermined. The referee does not show in his report that Stuart ever in any way objected to Proctor's residence upon or improvement of the land prior to the commencement of her injunction suit. The referee concluded as a matter of law, that Proctor was a mere trespasser upon the land, and that Stuart by virtue of her filing was entitled to the possession of the entire premises, and the court approved his report, and by its judgment awarded a mandatory injunction, ordering Proctor to cease trespassing upon the land, excepting that he was allowed thirty days to remove any improvements and the personal

property he had upon the premises.   From this order
the defendant below appeals and the sole question for
this court to pass upon is whether or not the lower court
erred in awarding the mandatory injunction prayed for.

That such injunction will lie in proper cases to pre-
serve to a homestead entryman his right of possession in
the land covered by his filing is well settled by the de-
cisions of this court. (*Sproat v. Durland*, 2 Okla. 24;
*Reaves v. Oliver*, 3 Okla. 62; *Woodruff v. Wallace*, 3
Okla. 55.) And in this connection it may be well to
note that other states have also held to a similar view.
(*West. Imp. Co. v. Windsor et al.* 36 Pac. 441; *Lee v.
Watson*, 38 Pac. 1072; *Jackson v. Jackson*, 17 Or. 110,
19 Pac. 847; *Wood v. Murray*, [Iowa] 52 N. W. 356.)
But all of these decisions are based upon a state of facts
wholly different from those in the case under consider-
ation.   In *Sproat v. Durland, supra*, an injunction was
awarded against a contestant who claimed settlement
upon the tract of land subsequent four years in point of
time to that of Durland, and which settlement by Sproat
was attempted against the vigorous protests of Durland, by
the purchase of the improvements of a person who had
been the adverse party to Durland in a contest proceed-
ing, pending to determine the question of title in the
land.   The court held under such circumstances that
Sproat was a mere trespasser and that he could not
under such conditions be permitted to claim a settler's
right to reside upon and control in part, the possession
of the land.

*Reaves v. Oliver, supra*, is a case where Oliver, the
successful contestant had, after five years litigation, se-
cured the cancellation of a homestead entry, and after
being awarded the preference right of entry, by virtue of
his contest, one Reaves attempted to maintain a settle-

ment upon the land, the claim of Reaves in his contest being that he settled upon the land previous to the date of the cancellation of the entry, which cancellation was the result of Oliver's contest, and the further allegation that the contest of Oliver was collusive and fraudulent. This court held that Reaves had no legal right of occupancy in the land, either by virtue of his settlement made years after the land had been segregated by a homestead filing, neither had he any status as a settler against Oliver who was objecting and protesting against such settlement.

The case of *Woodruff v. Wallace, supra,* involves a somewhat different question. Wallace filed a contest against Woodruff, the entryman, and secured the cancellation of the homestead filing of Woodruff. The land department had closed the case, holding that Woodruff was disqualified to make a homestead entry. Wallace filed his entry for the land in dispute, and Woodruff refused to give possession. The court held that mandatory injunction would lie, as there was no adequate remedy at law whereby Wallace could be protected in his rights as a settler upon the land.

The cases above cited from the different states which have passed upon this question are similar to the case of *Sproat v. Durland, supra.* The case we are now considering differs very widely in essential particulars from those heretofore presented. Both parties to this action have maintained settlements and homes upon the land from about the date when the country opened to settlers until the present time; both have made valuable and permanent improvements thereon, and it does not appear from the report of the referee that Stuart objected in any manner to the occupancy and improvement of Proctor until the institution of this action in the court below. It would

seem that they have lived upon the same tract in peace and no showing of acts of aggression or harassment upon the part of Proctor is attempted.   Stuart has been very slow in proceeding to dispossess her adversary, and no reason is shown therefor.   Under the pleadings and findings of the referee, Stuart appears to have waited until Proctor had improved a portion of the land before attempting to dispossess him.   She does not need the land Proctor has for her own use, as there is forty acres still remaining of the tract which she could occupy and improve if she so desired.

Under these circumstances, her application has in it nothing which should appeal to a court of equity.    She has suffered Proctor to remain in undisturbed possession of the tract of land from the date of her filing until she instituted this action, a period of nearly five years, and a court of equity should be slow to assist by its speedy process of injunction a party who is so dilatory in asking its relief.   In speaking of mandatory injunctions, Pomery, in vol. 3, § 1359, states the rule as follows:

"Where on the final hearing in a case of nuisance, or interference with easements, or continued trespass analogous to nuisance, the relief is granted compelling the defendant to remove his obstructions or erections, and to restore the plaintiff to his original condition, and thereby to end the wrong, the remedy is in fact an ordinary decree for an abatement, and is in no proper sense an injunction of any kind.   But in these and similar cases, the *preliminary* injunction, while purporting simply to restrain the wrong, and while negative in its terms, may be so framed that it restrains the defendant from permitting his previous wrongful act to operate, and therefore virtually compells him to undo it by removing the obstructions or erections and by restoring the plaintiff to his former condition. Such an injunction is termed mandatory, and resembles in its effect the restorative interdict of the Roman law.   It is used where

the injury is immediate and pressing, and irreparable, and clearly established by the proofs, and not acquiesced in by the plaintiff; * * * * The rule is fully established, at least by the English decisions, and is not controverted by American authority, that in such cases, where the facts are clearly established and the injury is real, and the plaintiff acted promptly upon his acquiring knowledge of defendant's proceeding, a preliminary mandatory injunction may be granted although the act complained of was fully completed before the suit was commenced. It should be observed, however, that no other equitable remedy is more liable to be defeated by acquiescence, or by delay on the plaintiff's part from which acquiescence may be inferred."

And in a note to the same section, this language is also used:

"Where the injunction is sought to compel the removal of structures, walls, buildings, and the like, if the plaintiff knowingly permit the defendant to go on and incur any considerable further expenditure of money, before he makes objection, he will generally lose his right to the somewhat special remedy of a mandatory injunction."

This doctrine, with numerous citations in support thereof, is also found in § 42, vol. 1, Beach on Injunctions, and upon this the author says:

"A party may forfeit his right to an injunction by sleeping on his rights, and allowing a grievance to continue for a long time. An injunction will be refused to complainant who has intentionally delayed his application until he has obtained an inequitable advantage of the defendant."

In support of this principle may be cited *Arne v. Fridenberg*, 143 Penn. St. 467, in which opinion the court said:

"If there is anything well settled in equity it is that a chancellor will not extend the aid of an injunction

where a party has slept for a long time upon his rights. This is the recognized rule in England and in this country."

In volume 2, § 1021, Spelling, is found the same principle, with citations of adjudicated cases in support thereof. The cases in this court wherein relief has been granted by a mandatory injunction are those only where no adequate remedy at law could be invoked, or where the law's delay would greatly prejudice the rights of a plaintiff. In no case should this action obtain where the party invoking it has knowingly permitted the alleged wrong to continue for such a time that the granting of an injunction would work an injustice against a defendant. In the case under consideration, Proctor has been permitted to build him a home, and make valuable improvements upon the land in dispute to the extent of $300, as shown by the report of the referee. He has been engaged for five years in so doing, and all the time with the full knowledge of Stuart, and under the peculiar circumstances of the case, the granting of an injunction against him which would dispossess him of his improvements and drive him from the land would be an inequitable act, and one from which no benefits would accrue to Stuart. If, after the title to this land shall have been settled in the department having jurisdiction thereof, Stuart is successful in obtaining such title, the injunction would properly lie to give to her that possession which cannot be obtained by a speedy process under the laws of this Territory, but until such time, we are of the opinion that Proctor should not be disturbed in such portion of the land as he has reduced to his own possession by the expenditure of his own labor and money.

The jugdment of the court below is reversed and cause

remanded with instructions to render judgment in accordance with this opinion.

Scott, J., having presided at the trial in the court below, not sitting; all the other Justices concurring.