# BLACK *v.* JACKSON.

## APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF OKLA-HOMA.

No. 107. Submitted February 1, 1900. — Decided March 26, 1900.

By a petition filed by Jackson against Black in the District Court of Kay County, Oklahoma Territory, the following case was made: On the 17th day of November, 1896, Jackson made a homestead entry upon the S.W. ¼ sec. 26, T. 28, R. 2 east, I. M. The same land prior to that date had been embraced in a homestead entry made by Black, but that entry was finally held for cancellation by the Secretary of the Interior, who by a decision rendered October 26, 1896, denied Black's motion for review and allowed Jackson to make entry of the land. After that decision Black continued to remain in possession of the west eighty acres of the tract, and refused and neglected to vacate the same, although requested to do so. He had upon the land a barbed wire fence and other improvements attached to the realty. It was alleged that he was financially unable to respond in damages for any injury he was causing the plaintiff by trespassing upon the land, and that plaintiff had no adequate remedy other than by this suit. The relief asked was a mandatory injunction to restrain the defendant from entering upon or in any manner trespassing

upon or using any portion of the land embraced in the plaintiff's home-
stead entry; from removing or in any manner destroying the fence or
other improvements on the lands that were permanently attached thereto;
and for such other and further relief as the court deemed just and right.
The defendant filed an answer, but it was withdrawn that he might file
a demurrer. He demurred to the application for an injunction upon the
grounds, among others, that it did not state facts sufficient to constitute
a cause of action and the court was without jurisdiction of the subject-
matter of the action. The demurrer was overruled, and the defendant
after excepting to that ruling filed an amended answer. In this answer
he set up title in himself as a homestead settler, set forth the manner in
which it had been acquired, alleged that the value of the property was
$6000, and prayed judgment. In his original answer he claimed that he
was entitled to a trial by jury, and in his amended answer he insisted
that his rights could not be disposed of in equity before the court only.
The trial court sustained a demurrer to the answer, and the defendant
declining to further answer, judgment was rendered for the plaintiff as
prayed for in the application for a mandatory injunction, the defendant
being enjoined from in any manner entering upon the premises in ques-
tion or exercising any control or possession over them except for the pur-
pose of removing therefrom his improvements, including buildings and
fences for which thirty days' time was given, which judgment was sus-
tained by the Supreme Court of the Territory. *Held*:

(1) That this court has jurisdiction as the amount involved is beyond the
jurisdictional amount.

(2) That the case made out by the plaintiff was not such as to entitle him
to a mandatory injunction, and that the court of original jurisdic-
tion erred in determining the cause without a jury.

By a petition filed by Jackson against Black in the District
Court of Kay County, Oklahoma Territory, the following case
was made:

On the 17th day of November, 1896, Jackson made a home-
stead entry upon the S.W. ¼ sec. 26, T. 28, R. 2 east, I. M.
The same land prior to that date had been embraced in a
homestead entry made by Black, but that entry was finally
held for cancellation by the Secretary of the Interior, who by
a decision rendered October 26, 1896, denied Black's motion
for review and allowed Jackson to make entry of the land.
After that decision Black continued to remain in possession of
the west eighty acres of the tract, and refused and neglected
to vacate the same, although requested to do so. He had upon
the land a barbed wire fence and other improvements attached

to the realty. It was alleged that he was financially unable to respond in damages for any injury he was causing the plaintiff by trespassing upon the land, and that plaintiff had no adequate remedy other than by this suit.

The relief asked was a mandatory injunction to restrain the defendant from entering upon or in any manner trespassing upon or using any portion of the land embraced in the plaintiff's homestead entry; from removing or in any manner destroying the fence or other improvements on the lands that were permanently attached thereto; and for such other and further relief as the court deemed just and right.

The defendant filed an answer, but it was withdrawn that he might file a demurrer. He demurred to the application for an injunction upon the grounds, among others, that it did not state facts sufficient to constitute a cause of action and the court was without jurisdiction of the subject-matter of the action. The demurrer was overruled, and the defendant after excepting to that ruling filed an amended answer.

In the first paragraph of the amended answer the defendant alleged that he had resided upon the land in question since about the 16th day of September, 1893, claiming a right thereto under the laws of the United States; that at the time of settlement thereon and thereafter he was a legally qualified homestead claimant; that he had done no act of any kind or nature since the 16th day of September, 1893, disqualifying him to hold the land as a homestead; that on the 31st day of October, 1895, he filed a homestead entry upon the land, and afterwards the plaintiff filed a contest against such entry upon the ground that his settlement as a homestead claimant was prior to that of defendant and prior to the filing of defendant's homestead entry; that it had been finally determined and decided by the Land Department of the United States that defendant's settlement upon and entry of the land was subsequent to that of plaintiff, and defendant's homestead entry was cancelled and plaintiff allowed to make homestead entry upon the sole ground that plaintiff's settlement was prior to the settlement and homestead entry of the defendant; that during the time he had resided upon the land, defendant had

placed thereon lasting and valuable improvements, worth about
$500, claiming to be entitled to the benefit of the laws of the
United States and of the Territory of Oklahoma relating to
occupying claimants; and that his rights "cannot be disposed
of in a case in equity before the court only."

The second paragraph of the answer alleged that on the 16th
day of September, 1893, and thereafter the defendant was a na-
tive-born citizen of the United States, in all respects qualified to
make homestead entry upon the land in question; that on that
day, after 12 o'clock, central standard time, (a signal for start-
ing from the outer line of the Cherokee outlet being given,) he
ran from the 100-foot strip along the south line of the State of
Kansas that had been measured, staked off, and reserved as a
gathering place for those desiring to "run" for lands in the
Cherokee outlet, and made all possible haste to secure and settle
upon a suitable piece of land as a homestead; that there were
many thousands of people along that line, more than could se-
cure homes in the outlet, allowing one hundred and sixty acres
to each qualified entryman; that the plaintiff, not observing the
law, the proclamation of the President, and the rules governing
the opening of those lands to settlement, and for the purpose of
gaining an unlawful and undue advantage of defendant and
others seeking a home in the outlet, crossed the 100-foot reserve
around the outer boundary of the lands prior to 12 o'clock noon,
central standard time, September 16, 1893, and unlawfully and
wrongfully entered upon the lands embraced within the outlet
and within the 100-foot reservation known as the Chilocco res-
ervation, and at the hour of noon, when the outlet was opened
to settlement, started on the race for a home from the south line
of that reservation and about three and one half miles south of
the 100-foot reservation along the northern boundary of the
Cherokee outlet, and thereby wrongfully, unlawfully, and un-
justly started in the race for a home three and one half miles in
advance of the defendant and others who observed the law of Con-
gress opening the lands to settlement and the President's proc-
lamation pursuant thereto; that plaintiff's prior settlement was
wholly by reason of said advantage; that plaintiff filed in the
United States land office at Perry, Oklahoma Territory, a contest

against defendant's homestead entry made upon the land described in the petition on the 31st day of October, 1893, and as grounds for the contest alleged and claimed that he, plaintiff, settled upon the land in question, claiming it as his homestead prior to the settlement and homestead entry of defendant; that upon the trial of such contest it was conclusively proven and admitted by plaintiff that he had started upon the race from the south line of the Chilocco reservation as stated; that upon such trial the register and receiver of the land office at Perry, Oklahoma Territory, found from the evidence that plaintiff had started upon the race from the point and in the manner mentioned, and also that his settlement upon and claim of the land was prior to that of defendant, and the qualification of the plaintiff to acquire a homestead on account of his having entered upon the land in violation of the act of Congress opening the same to settlement and the President's proclamation pursuant thereto was directly in issue between plaintiff and defendant in the contest case; but that the register and receiver, although finding from the evidence and admissions of plaintiff that he had so entered upon said land, misunderstood and wrongfully interpreted and misapplied the law in relation to the qualification of plaintiff to take and hold the land as a homestead, and expressly found as a matter of law that plaintiff was not disqualified as " a sooner" by reason of having entered upon the land in the manner aforesaid.

The answer also alleged that the defendant duly appealed from the decision of the register and receiver to the Commissioner of the General Land Office, presenting to that officer the same question with reference to the disqualification of plaintiff to acquire title to the land as a homestead, but that the Commissioner misapplied the law and wrongfully and unlawfully sustained the conclusion of the register and receiver in that regard; that the defendant then appealed to the Secretary of the Interior, to whom the same legal question was submitted, and the Secretary also misapplied the law in relation to the qualification of plaintiff and wrongfully and unlawfully sustained the findings of the Commissioner; that the defendant duly filed his motion for review in the case, in which the question as to the qualifica-

tion of plaintiff was presented, and urged a reconsideration and reversal, but the Secretary, still misunderstanding and misapplying the law, wrongfully and unlawfully refused a review, and wrongfully and contrary to law cancelled the homestead entry of defendant and permitted plaintiff to make homestead entry of the land, although plaintiff was at the time and still is wholly disqualified to acquire title to it based upon a prior settlement by reason of his having entered upon the Cherokee outlet in violation of law; that by reason of such disqualification the plaintiff could never acquire the title to the land, nor a greater estate therein than a trust estate for the sole benefit of the defendant; that defendant was lawfully entitled to reside upon the land as a homestead and acquire the title thereto by compliance with the laws of the United States and the rules of the Land Department; and that plaintiff, being disqualified to acquire title, should not be heard in this action to demand that defendant be ejected from the land and his home and improvements thereon.

The answer further alleged that if the defendant were ejected from the land and his home and improvements thereon the plaintiff would relinquish to the Government of the United States for a valuable consideration all his claim to and interest in the land, and the same would "be entered as a homestead by some other person qualified to enter and hold the same and a stranger to the disqualification and wrongful acts of the plaintiff herein; that said land, with the improvements thereon by this defendant, could be transferred in the manner aforesaid for the sum of $6000; that he has been by temporary order of this court restrained from exercising the right of possession and control over all of said land, with the exception of about five acres occupied by his dwelling and improvements immediately surrounding the same, and that he is ready and willing to execute to the plaintiff a good and sufficient bond to compensate him for all loss of every kind or nature occasioned by defendant's occupancy and detention of said five acres and improvements, provided defendant is allowed to retain his possession thereof and so remain in position to assert his rights to all of said land as soon as he can possibly do so in accordance with law."

The defendant prayed: First. That the plaintiff be not allowed to further maintain his action for the possession of the land or any part thereof. Second. That in the event that prayer was not granted the plaintiff be denied the right to maintain his action to the extent of wholly ejecting the defendant from the five acres and his dwelling and improvements situated thereon until such time as the plaintiff acquired a patent to the land and the defendant was in a position to commence suit for the purpose of having plaintiff's title so acquired declared to be held in trust for him.

The trial court sustained a demurrer to the answer, and the defendant declining to further answer, judgment was rendered for the plaintiff as prayed for in the application for a mandatory. injunction, the defendant being enjoined from in any manner entering upon the premises in question or exercising any control or possession over them except for the purpose of removing therefrom his improvements, including buildings and fences, for which thirty days' time was given.

This judgment was affirmed in the Supreme Court of the Territory. That court in its opinion held (using the words of the syllabus prepared by the court) that " where adverse claimants are residing upon a tract of land and each claiming the same as a homestead by virtue of priority of settlement, and the Land Department makes a final award thereof, the losing party cannot properly claim the right to continue his residence upon the land for the purpose of bringing a suit in equity to declare a. trust against his successful adversary, when he has already resided upon the land a sufficient length of time, under the law, to enable him to make final proof for the land." 6 Okla. 751.

*Mr. John W. Shartel* and *Mr. S. H. Harris* for appellant.

*Mr. Fred. Beall* for appellee.

Mr. Justice Harlan, after stating the facts, delivered the opinion of the court.

1. The final judgment of the Supreme Court of the Territory

can be reëxamined here if the value of the matter in dispute be sufficient to give this court jurisdiction. The defendant claimed to have acquired by his entry and settlement a vested interest in the entire land covered by his entry, and insisted that even if the plaintiff obtained a patent therefor the title would be held in trust for him. He proceeds in his defence upon the ground that after residing upon the land for the period designated in the statute he will be entitled under the law to a patent. It ought not to be assumed that he will put himself in such position that he cannot demand a patent. Although the naked legal title remains in the United States in trust for the person who may earn it, we think that in determining the value of the matter in dispute we should look at the value of the land, not simply at the value of the right of present possession. According to the weight of proof, the value of the land embraced by the homestead entry of Black is more than the sum required for our jurisdiction. 23 Stat. 443, c. 355; 26 Stat. 81, 86, c. 182, § 9. Besides, the demurrer admitted the averment in the answer to the effect that the land with the defendant's improvements thereon could be transferred in the manner stated in the answer for the sum of $6000. The motion to dismiss the appeal must therefore be overruled.

2. This case having been determined on demurrer to the answer, it must be taken as true that Black resided upon the land in dispute on and after September 16, 1893, claiming the right to do so in virtue of the laws of the United States and of a homestead entry made before the one made by Jackson. It appears that the Land Office recognized the prior right to be in Jackson. This action of the Land Office, Black contends, was erroneous in matter of law, and he has announced his purpose, in the event a patent is issued to Jackson, to institute appropriate judicial proceedings, the object of which will be to have it declared that the legal title is held in trust for him. He insists that although, in the absence of fraud, the courts will not go behind the facts found by the Land Department in any contest before it relating to the administration of the public lands, he is not concluded by the decision of that department upon questions of law.

If parties are injuriously affected by any action of the Land

Department based upon an erroneous view of the law, the courts have power in some form to protect their rights against such illegal action. In *Cornelius* v. *Kessel*, 128 U. S. 456, 461, this court said: "The power of supervision possessed by the Commissioner of the General Land Office over the acts of the register and receiver of the local land offices in the disposition of the public lands, undoubtedly authorizes him to correct and annul entries of land allowed by them, where the lands are not subject to entry, or the parties do not possess the qualifications required, or have previously entered all that the law permits. The exercise of this power is necessary to the due administration of the land department. If an investigation of the validity of such entries were required in the courts of law before they could be cancelled, the necessary delays attending the examination would greatly impair, if not destroy, the efficiency of the department. But the power of supervision or correction is not an unlimited or an arbitrary power. It can be exerted only when the entry was made upon false testimony, or without authority of law. It cannot be exercised so as to deprive any person of land lawfully entered and paid for. By such entry and payment the purchaser secures a vested interest in the property and a right to a patent therefor, and can no more be deprived of it by order of the Commissioner than he can be deprived by such order of any other lawfully acquired property. Any attempted deprivation in that way of such interest will be corrected whenever the matter is presented so that the judiciary can act upon it." So in *Sanford* v. *Sanford*, 139 U. S. 642, 647, it was said that where the matters determined by the Land Office "are not properly before the department, or its conclusions have been reached from a misconstruction by its officers of the law applicable to the cases before it, and it has thus denied to parties rights which, upon a correct construction, would have been conceded to them, or where misrepresentations and fraud have been practised, necessarily affecting its judgment, then the courts can, in a proper proceeding, interfere and control its determination so as to secure the just rights of parties injuriously affected " — citing *Quinby* v. *Conlan*, 104 U. S. 420, 426; *Baldwin* v. *Stark*, 107 U. S. 463, 465.

As to Jackson's right to possession, it is clear that although successful in his contest with Black before the Land Office, no patent could issue to him under the original homestead law until after the expiration of five years from the date of his entry, and not then except upon proof that he, or if he be dead his widow, or if she be dead her heirs or devisees, prove " by two credible witnesses that he, she or they have resided upon or cultivated the same for the term of five years immediately succeeding the time of filing the affidavit, [required by § 2290 of the Revised Statutes,] and makes affidavit that no part of such land has been alienated, except as provided in § 2288, and that he, she or they will bear true allegiance to the Government of the United States; then, in such case, he, she or they, if at that time citizens of the United States, shall be entitled to a patent, as in other cases provided by law." Rev. Stat. § 2291. But by the third section of the act of May 14, 1880, entitled " An act for the relief of settlers on public lands," 21 Stat. 140, c. 89, it was provided "that any settler who has settled, or who shall hereafter settle, on any of the public lands of the United States, whether surveyed or unsurveyed, with the intention of claiming the same under the homestead laws, shall be allowed the same time to file his homestead application and perfect his original entry in the United States land office as is now allowed to settlers under the preëmption laws to put their claims on record, and his right shall relate back *to the date of settlement,* the same as if he settled under the preëmption laws."

It thus appears that Jackson holds only an inchoate title to the land in dispute, and that he may so conduct himself before making final proof and securing final certificate as to forfeit his right to obtain a patent based upon the decision of the Land Office.

By the decree below the defendant is enjoined from entering upon the premises in question or exercising any further control or possession over them, except to remove his improvements within thirty days after the decree. In his original answer the defendant claimed that he was entitled to a trial by jury, and in his amended answer he insisted that his rights could not be disposed of in equity before the court only.

What circumstances under the laws of Oklahoma will justify the use of a mandatory injunction for the purpose of ousting a person of the possession of land and putting his adversary in possession—neither party having the legal title—is left in some doubt by the decisions of the Supreme Court of that Territory. *Sproat* v. *Durland,* 2 Okla. 24; *Peckham* v. *Faught,* 2 Okla. 173; *Reaves* v. *Oliver,* 3 Okla. 62; *Woodruff* v. *Wallace,* 3 Okla. 355; *Procter* v. *Stuart,* 4 Okla. 679; *Barnes* v. *Newton,* 5 Okla. 428; *Laughlin* v. *Fariss,* 7 Okla. 1; *Glover* v. *Swartz,* 58 Pac. Rep. 943; *Brown* v. *Donnelly,* 59 Pac. Rep. 975. Some of the decisions seem to restrict the right to such an injunction to cases in which the defendant was a mere trespasser upon the particular land in dispute without color or pretense of claim or title, while others recognize the appropriateness of that remedy where a plaintiff seeks possession after succeeding in a contest before the Land Office with one who at the initiation of such contest was in peaceable possession and in good faith contending for his right to such possession.

We think that the decision in *Laughlin* v. *Fariss,* 7 Okla. 1, 5–7, 9, 11, should be accepted as a correct exposition of the law of the Territory. What was that case? One F. M. Fariss made a homestead entry on land and received a certificate of cash entry. The interest so acquired was conveyed by deed to W. D. Fariss. Before F. M. Fariss made his final proof, Laughlin filed against him a contest on the ground of prior settlement. That contest finally came before the Secretary of the Interior for review and was decided adversely to Laughlin. Subsequently, and before F. M. Fariss made his final proof, Laughlin filed another contest alleging that Fariss was disqualified to make a homestead entry by reason of having entered the Oklahoma country in violation of law. Fariss' assignee sued Laughlin, alleging that he was entitled to the sole and exclusive occupancy of the land, and asking that an injunction be awarded restraining Laughlin from cultivating or interfering with the land and removing him from the premises.

The questions presented to the Supreme Court of Oklahoma for decision in that case were: 1. Did the petition show that plaintiff had an equitable title to the tract of land in contro-

versy? 2. If so, was that title a sufficient basis for an action at law for the recovery of the possession of the land? 3. Should questions 1 and 2 be answered in the affirmative, then the inquiry was whether the petition contained a sufficient statement of facts to justify the relief sought and obtained?

The court answered the first question upon the authority of *Laughlin* v. *Farris*, 7 Okla. 1, 6, in which it was held that "when a homestead entryman has complied with all the requirements of the Federal statutes applicable to the disposal of the tract of land occupied by him, and has made his final proof, paid the amount of money required and received final certificate therefor, he has a complete equitable title to said land, with the naked legal title only remaining in the Government."

In answering the second question in the affirmative, the court referred to section 614 of the territorial Code of Civil Procedure which provides: "In an action for the recovery of real property, it shall be sufficient if the plaintiff state in his petition that he has a legal or equitable estate therein, and is entitled to the possession thereof, describing the same, as required by section 127, and that the defendant unlawfully keeps him out of possession. It shall not be necessary to state how the plaintiff's estate or ownership is derived." Stats. Okla. (1893) 864, Title Procedure— Civil. Section 127 here referred to provides that "in any action for the recovery of real property, it shall be described with such convenient certainty as will enable an officer holding an execution to identify it." The Supreme Court of the Territory said, 7 Okla. 6: "It would seem that the language of this section is too plain to need the support of authority to show that an equitable title or estate in land is a sufficient basis for an action in the nature of ejectment, but if such were necessary it can be found in abundance by consulting the decisions of the Supreme Court of the State from which the statute was taken"— citing *Simpson* v. *Boring*, 16 Kan. 248; *Kansas Pac. Ry. Co.* v. *McBratney*, 12 Kan. 9; *Duffey* v. *Rafferty*, 15 Kan. 9; *State* v. *Stringfellow*, 2 Kan. 263; *Atchison, Topeka &c. Railroad* v. *Pracht*, 1 Pac. Rep. 319. The court added: "It is also apparent that the allega-

tions contained in plaintiff's petition regarding his title and right of possession are amply sufficient to entitle him to maintain *an action of forcible detainer for the possession of said tract of land.* *Price* v. *Olds,* 9 Kan. 66; *Conaway* v. *Gore,* 27 Kan. 122."

The third question was answered in the negative, the court reaffirming the principle announced in *Richardson* v. *Penney,* 6 Okla. 328, in which it was said: " We still hold to the well, if not universally, established doctrine that, when a party has a plain and adequate remedy at law he cannot invoke the powers of a court of equity to issue its writ of injunction."

In the course of its opinion the court having stated that it was conceded that the action of forcible entry and detainer would lie in a case like the one then before it, said: " This remedy by injunction, both mandatory and prohibitive in character, may and does sometimes become a very far-reaching and oppressive, as well as a speedy and effective one, and should only be granted by courts of equity in cases where the applicants therefor bring themselves clearly within the well-defined and established rules authorizing the issuance of same; hence, such courts rarely deem it necessary or advisable to interfere in this manner, to aid a person endeavoring to recover the possession of real property " — citing High on Injunctions, 2d ed. §§ 354, 355 and 360, and *Lacassagne* v. *Chapuis,* 144 U. S. 119, 124. The rule, the court observed, was clearly and concisely stated by this court in *Lacassagne* v. *Chapuis,* in which it was said: " The plaintiff was out of possession when he instituted this suit, and by the prayer of this bill he attempts to regain possession by means of the injunction asked for. In other words, the effort is to restore the plaintiff by injunction to rights of which he had been deprived. The function of an injunction is to afford preventive relief, not to redress alleged wrongs which had been committed already. An injunction will not be used to take property out of the possession of one party and put it into that of another. . . . The plaintiff has a full, adequate and complete remedy at law, and the case is not one for the jurisdiction of a court of equity."

The Supreme Court of the Territory thus concluded its opin-

ion in *Laughlin* v. *Fariss :* "We hold that the action of injunction will not lie to adjust possessory rights to a tract of land after the equitable title thereto has passed from the Government of the United States and become vested in an individual, unless in a case which presents some recognized special ground therefor, which must be one other than that one party claims that he is the owner and entitled to the immediate possession thereof and that the other party unlawfully and without any right whatever holds and retains such possession. We therefore conclude that the facts, stated by the plaintiff below in his amended petition, are not sufficient to entitle him to the interference of a court of equity."

In the decision in *Laughlin* v. *Fariss* all the justices of the Supreme Court of the Territory concurred, including those who constituted the majority when the present case was decided. And we cannot find that that court has in any case withdrawn or qualified the ruling that an entryman, out of possession and having a decision by the Land Office in his favor, may proceed against his adversary in possession by an action of forcible detainer and thus obtain possession without resorting to the extraordinary remedies used by courts of equity. According to the decisions of that court, Black, as between himself and his successful adversary, was in possession without color of title. Now, by the statutes of the Territory, in the Article relating to forcible entry and detainer, if it be found that lands and tenements after a lawful entry "are held unlawfully," then the justice "shall cause the party complaining to have restitution thereof;" and it is provided that proceedings under that Article may be had in all cases "where the defendant is a settler or occupier of lands and tenements, without color of title, and to which the complainant has the right of possession." Stats. Okla. 1893, 919, 920, §§ 4805, 4806.

In the opinion in the present case the Supreme Court of the Territory said nothing about defendant's contention that he was entitled to a trial by jury. Speaking by the same justice who in the court below delivered the opinion in the present case, the Supreme Court of the Territory in *Barnes* v. *Newton*, 5 Okla. 428, 432, conceded that in a case between contesting entrymen

the one who obtained the decision of the Land Office might avail himself of the statutory provisions relating to forcible entry and detainer, but that such a remedy was not sufficiently efficacious, for the reason that "by delays and appeals a party in possession of a homestead could keep his adversary out of possession of the land for years." But the same reason could be urged to justify the extraordinary remedy of a mandatory injunction in order to put a defendant out of possession, even where the plaintiff was entitled to maintain ejectment or an action in the nature of ejectment. The suggestion referred to leaves out of view the distinction made by the Constitution of the United States between cases in law and cases in equity. *Robinson* v. *Campbell*, 3 Wheat. 212, 223; *Payne* v. *Hook*, 7 Wall. 425; *Van Norden* v. *Morton*, 99 U. S. 378; *Smyth* v. *Ames*, 169 U. S. 466, 516. And it also fails to recognize the provisions of the Seventh Amendment securing the right of trial by jury in "suits at common law" where the value in controversy exceeds twenty dollars. That Amendment, so far as it secures the right of trial by jury, applies to judicial proceedings in the Territories of the United States. *Webster* v. *Reid*, 11 How. 437, 460; *American Publishing Co.* v. *Fisher*, 166 U. S. 464, 466; *Springville* v. *Thomas*, 166 U. S. 707. So that a court of a Territory authorized as Oklahoma was to pass laws not inconsistent with the Constitution of the United States, 26 Stat. 81, 84, c. 182, § 6, could not proceed in a "common law" action as if it were a suit in equity and determine by mandatory injunction rights for the protection or enforcement of which there was a plain and adequate remedy at law according to the established distinctions between law and equity. And this evidently is in accordance with the statutes of Oklahoma providing that while the court must try issues of law, unless referred in the mode prescribed, "issues of fact arising in actions for the recovery of money or of specific real or personal property, shall be tried by a jury, unless a jury trial is waived or a reference be ordered." Stat. Okla. 1893, 809, § 4156.

In the case before us no special grounds are disclosed that would authorize the court to issue a mandatory injunction and determine without a jury the issue as to the right of possession.

If it be said that the plaintiff's residence upon the land for a given time is necessary in order that he may earn a patent, the answer is that the defendant is not alleged to be in the actual possession of the entire land embraced by the plaintiff's entry. Nor does it appear that the plaintiff may not, without interference by the defendant, maintain a residence upon that part of the land which is not in the actual possession of the defendant and do all that may be requisite in order to earn a patent. We may also observe that it is not alleged that the defendant is doing any actual injury to the part of the land remaining in his possession. It does not appear that he has done anything except to continue in possession of that part. If Black prevents Jackson from taking possession of the 80 acres in question, he is entitled to bring his action of forcible detainer and to recover possession unless it appears that the Land Office erred, as matter of law, in deciding for him. It is not meant by this that an action of forcible detainer is the only remedy that can be adopted by the plaintiff.

As in Oklahoma the distinction between actions at law and suits in equity is abolished — each action being called a civil action, whatever the nature of the relief asked, Okla. Stat. 1893, 764, § 3882 — we perceive no reason why the case may not proceed in the trial court under the pleadings as they have been framed, with the right of the defendant to a trial by jury in respect of all issues which, according to the recognized distinctions between actions at common law and suits in equity, are determinable in that mode.

3. One of the defenses made by Black is that the plaintiff entered upon the land in violation of the act of March 1, 1889, 24 Stat. 759, c. 317, and of the act of March 2, 1889, 25 Stat. 980, 1005, c. 412, as well as of the proclamation of the President of March 25, 1889, 26 Stat. 1544, 1546. The acts and proclamation referred to related to the lands obtained by the United States under the agreement with the Muscogee or Creek Nation of Indians in the Indian Territory. The contention of the defendant is that the plaintiff by his conduct disqualified himself from acquiring any interest in the tract of land here in dispute which was part of the lands obtained from the Muscogee or

Creek Indians, and consequently the Land Office erred as matter of law in its decision for the plaintiff. *Smith* v. *Townsend,* 148 U. S. 490; *Payne* v. *Robertson,* 169 U. S. 323; *Calhoun* v. *Violet,* 173 U. S. 60, 62. No opinion was expressed on this question by the Supreme Court of the Territory, and we need not now express an opinion. If the plaintiff should proceed against the defendant in some other mode than by injunction, the facts connected with his alleged unlawful entering upon the lands opened for settlement under the above acts and proclamation can all be proved, and any question arising out of them as to his disqualification to acquire any interest whatever in the land in dispute can then be determined.

We are of opinion that the case made out by the plaintiff was not such as to entitle him to a mandatory injunction, and that the court of original jurisdiction erred in determining the cause without a jury.

*The decree of the Supreme Court of the Territory is therefore reversed, and the cause is remanded with directions to set aside that decree, and for such further proceedings as will be consistent with law and this opinion.*