**SOUTHERN RY. CO. v. CITY OF GREEN-WOOD et al.**

No. 196.

District Court, W. D. South Carolina, Greenwood Division.

Feb. 1, 1928.

Blythe & Bonham, of Greenville, S. C., and John B. Hyde, of Washington, D. C., and Frank G. Tompkins, of Columbia, S. C., for plaintiff.

Park & McDonald, Mays & Featherstone, and W. H. Nicholson, all of Greenwood, S. C., for defendants.

WATKINS, District Judge.

This matter comes before me upon a motion by the defendants for an order "requiring the Clerk of Court to place this case on Calendar One for trial for the reason that the pleadings raise an issue of title to real estate, which under the Constitution and laws of the State of South Carolina is triable by a jury." Complainant filed its bill in equity in which the essential facts to be considered in this motion, briefly stated and omitting formal jurisdictional averments and matters of mere historical detail, may be summed up as follows:

Southern Railway Company, complainant, owns and operates a line of railway running through the city and county of Greenwood in this state and district, which was constructed and completed by its predecessor, the Greenville & Columbia Railroad Company, in the year 1853, and has been continuously operated by complainant and its predecessors in title ever since that date. It is alleged that complainant owns a right of way extending from a point in the city of Greenwood eastwardly in the direction of Columbia, S. C., having a total width of 200 feet, that is, 100 feet on each side of the center line of the main track of railroad, such right of way having been acquired through legislative charter granted to the Greenville & Columbia Railroad Company under the provisions of XI Statutes

348. It is further alleged that the defendants have recently chosen a new and altered route for a road known as state highway No. 21 by locating the same on the right-hand side of the railroad proceeding from Columbia in the direction of Greenville, and that they are now engaged in grading, and are about to erect a permanent improvement thereon consisting of a concrete, hard-surfaced road, together with ditches and drains and other appurtenances. It is further stated that, although the defendants have had permissive use of a roadway on the opposite side of the track, there has been no public use as a road or otherwise of-that portion of the right of way now encroached and sought to be further encroached upon. It is further stated that complainant made formal objection to the construction of such permanent improvements before the work had been in any way substantially proceeded with and before any of the permanent improvements had been laid.

It is alleged that the portion of the right of way now sought to be encroached upon is and soon will be needed for necessary railroad purposes, and that the trespass and encroachment by defendants will cause permanent and irreparable injury, will cast an illegal cloud upon the title of the complainant unless enjoined by the court, and that there is no plain and adequate remedy at law to prevent the threatened injuries.

Defendants' answers embrace complete denials of complainant's title to any right of way in the premises in question, set up in themselves paramount title acquired from the actual owners of the property, and further allege that, if the complainant ever had title to its alleged right of way, it has been lost by adverse possession and by acts constituting estoppel, and further that the permanent improvements sought to be enjoined have already been substantially completed. It will be observed that the answers do not challenge the sufficiency of the bill to present a proper cause for equitable relief, nor is it claimed in such answers that the complainant has a plain and adequate remedy at law. Indeed, it was conceded at the hearing upon application for a temporary injunction that the averments of the bill standing alone present a proper case for equitable jurisdiction. And there can be no doubt that, where a railroad company has acquired, and in the exercise of its franchise is in possession of, a right of way over real estate, the proper procedure to avoid encroachments such as are herein alleged is by bill in equity.

Upon and after the filing of the bill, complainant made application for, and procured from the court, a rule requiring the defendants to show cause why, pending the determination of the suit, a temporary injunction should not be granted against the construction of the threatened permanent improvements. At the hearing upon this rule, affidavits were submitted by the parties to the cause in support of their various contentions, and the rule was heard upon these affidavits and the verified pleadings, and it was shown to the satisfaction of the court that the laying of the concrete roads and streets constituting the permanent improvements sought to be enjoined had already been substantially completed. It appeared, therefore, that, independently of the question of title, and without in any way passing upon such question, no practical good could result from granting a temporary injunction, that the railroad had not shown immediate and emergent need of the strip of land in question, nor that any additional injury could result from the alleged encroachment pendente lite, and that the question of injunction had therefore become substantially moot.

It might have been deemed appropriate to dispose of the motion before me by granting it or disallowing it in a brief formal order, either without opinion or with an opinion setting forth in a few words the reasons for the court's decision. It has been thought advisable, however, because of the public interests involved, and also for the purpose of clearly setting out the court's interpretation of the proper practice under the Rules of Practice for the Courts of Equity, promulgated in 1913, to extend the discussion to such length as will give the members of the bar of the district a clear and comprehensive statement of the proper procedure. The review of the authorities has been exhaustive and far beyond the scope of the authorities cited by counsel. There will be no attempt, however, to make a thorough analysis of all cases investigated because of the emergent need of a prompt decision. As I construe equity rules 22 and 23 (28 USCA § 723) along with the decided cases, it is not necessary to limit my decision to the precise terms of the written motion filed with me. It is both the right and the duty of the court to have the issue of title now presented tried by the appropriate tribunal whether at law or in equity. There has been no waiver by the defendants of any of their legal rights, and, if the case as it now stands is a law case, or if the question of title be fundamental and

triable by jury as of right, the court can pursue no other course. I take it that the motion of the defendants negatives the idea of waiver, since it demands in terms the trial of the question of title by a jury as in a law action.

At the outset it should be observed that, prior to the adoption of these rules, the transfers permitted in rules 22 and 23 were not permissible. The United States courts had always held to the doctrine that an action begun in equity must proceed to its conclusion on the equity side. Plaintiff's right to the relief sought must be asserted from the beginning to the end in that suit and in accordance with the principles and procedure in chancery courts. It was held, however, in certain cases where the issue of title was made by the answer, that the proper practice was to suspend further proceedings in the court of equity until by separate action at law this question could be determined. The division between law and chancery procedure was sharply defined and rigorously maintained, and in the trial of cases in equity the federal courts were in no way to be controlled by the procedure under the state Codes because of the conformity act. It was accordingly held that, in the absence of expressed statutory or constitutional provisions, a jury was no part of the chancery system, the court having the power to decide all the issues whether of law or fact, and neither party entitled as a right to have the issue of fact tried by a jury. 21 Corpus Juris, 585, 594. Where issues in chancery were submitted to a jury, they were merely advisory. Kohn v. McNulta, 147 U. S. 238, 13 S. Ct. 298, 37 L. Ed. 150; Barton v. Barbour, 104 U. S. 126, 26 L. Ed. 672; Idaho & O. Land, etc., Co. v. Bradbury, 132 U. S. 509, 10 S. Ct. 177, 33 L. Ed. 433; Nashville R., etc., Co. v. Bunn (C. C. A.) 168 F. 862; Childs v. Mo., etc., Ry. Co. (C. C. A.) 221 F. 219; Boston, etc., Ry. Co. v. Sullivan (C. C. A.) 275 F. 890; Van Iderstine v. National Discount Company, 227 U. S. 575, 33 S. Ct. 343, 57 L. Ed. 652.

█ It is by no means declared, however, in any decision of the Supreme Court of the United States, which has come to my attention in the exhaustive but necessarily hurried examination which the decision of this motion requires, that even in an equity case in which the fundamental issue is dependent upon a question of fact triable by a jury, and in which that right has been guaranteed by the Constitution of the state and of the United States, that equity would be permitted to determine such question without the jury's decision at law upon such question first being had. It is also true that in many equity cases questions of fact ordinarily triable by jury have been determined under the old rules of equity, even after jury trial was demanded. It is true, however, that even in the cases arising before the adoption of the new equity rules those decisions were based upon the fact either that the questions were incidental rather than basic or that bar of further proceeding in equity was not demanded as a constitutional right. It would seem elementary as well as logical that in a chancery case, where the relief sought should depend upon a question of fact in which there was guaranteed the constitutional right of trial by jury, and it should appear that none of the relief sought could be obtained except upon establishment of this fact, that the jurisdiction of equity would thereby be avoided. Otherwise, by alleging equitable facts, the constitutional guaranty would be set at naught. In South Carolina it has been uniformly held that the question of title to real estate raises a question of fact triable by a jury under guaranty of its Constitution, and it has accordingly been held that, where an equitable suit for partition of land has been begun and the legal issue of title is raised, that issue must first be determined by jury trial on the law side of the court, and not until its determination could the court proceed on its equity side to effect partition. Among the numerous cases on this subject may be cited Smith v. Bryce, 17 S. C. 542; Frazee v. Beattie, 26 S. C. 348, 2 S. E. 125; Osborne v. Osborne, 41 S. C. 195, 19 S. E. 494; Reams v. Spann, 28 S. C. 533, 6 S. E. 325; McGee v. Hall, 23 S. C. 392; Capell v. Moses, 36 S. C. 559, 15 S. E. 711; De Walt v. Kinard, 19 S. C. 289; Best v. Barnwell County, 114 S. C. 127, 103 S. E. 479; Dickson v. Epps, 104 S. C. 385, 89 S. E. 354.

█ Before proceeding to the consideration of the federal cases bearing upon this issue of title, it may be well to direct attention to the fact that the lands in question are situated within the state of South Carolina, that the titles are derived from the state, and that their tenure is subject to the provisions of the Constitution and laws of the state. It is unnecessary more than to refer to provisions of the state Constitution guaranteeing rights of trial by jury and the similar provisions of the Federal Constitution. In addition to these, section 533, vol. 1, of the South Carolina Code of Laws of 1922, provides as follows: "An issue of fact, in an action for the

recovery of money only, or of specific real or personal property, must be tried by a jury, unless a jury trial be waived." A similar provision had been inserted in previous codes.

It was held in Fox River Co. v. R. R. Comm. of Wisconsin, 274 U. S. 651, 47 S. Ct. 669, 71 L. Ed. 1279, that the nature and extent of the rights of a state and of the owners in and to real estate within the boundaries of such state are primarily matters of state law to be determined by the statutes and judicial decisions of the state, citing Kaukauna Co. v. Green Bay, etc., Canal, 142 U. S. 254, at page 272, 12 S. Ct. 173, 35 L. Ed. 1004; Hardin v. Jordan, 140 U. S. 371, 11 S. Ct. 838, 35 L. Ed. 428; Barney v. Keokuk, 94 U. S. 324, at page 338, 24 L. Ed. 224. Since it is not necessary to this decision to express any opinion as to the extent, if at all, which the laws and decisions of the Supreme Court of South Carolina may control in requiring questions of title to be tried by jury, they are nevertheless entitled to consideration upon the question of whether defendants present more than a "naked claim of title," whether it is "colorable" or "absurd." (Quoted words are terms used by the Supreme Court of the United States.)

In Joyce on Injunctions, vol. 1, p. 67, § 32, it is said that in a federal court a bill in equity will not lie if it is in substance and effect an ejectment bill and if the relief it seeks can be obtained at law by an action in ejectment. The text quotes numerous authorities from the Supreme Court of the United States (note 43), among them Killian v. Ebbinghaus, 110 U. S. 568, 574, 4 S. Ct. 232, 234, 28 L. Ed. 246, in which the court said:

"The case is similar to the leading case of Hipp v. Babin, 19 How. 271, 15 L. Ed. [633] 663, which was dismissed by the circuit court on the ground that there was an adequate remedy at law. Upon appeal to this court the decree was affirmed. * * * And the court declared, as a result of the argument, 'that whenever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment which affords a plain, adequate, and complete remedy, without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right to a trial by a jury.'"

In 2 Joyce on Injunctions, § 1139, p. 1654 et seq., under the caption "When Plaintiff's Title in Dispute," it is said:

"The more general rule is that a trespass to real property will not ordinarily be enjoined where plaintiff's title is in dispute and has not been established at law. Thus, an injunction will not be granted in favor of a complainant out of possession, to restrain the removal of stone from land of which defendants had possession under a claim of ownership, when complainant claimed title to it from the Government, where the disputed question of title has not been adjudicated. And where both parties claim the title of the land in controversy, and the defendant shows that he is solvent and is acting in good faith, a preliminary injunction against him should be dissolved."

Of course, this doctrine is subject to the rule laid down by the Supreme Court in Erhardt v. Boaro, 113 U. S. 537, 5 S. Ct. 565, 28 L. Ed. 1116, as follows:

"It was formerly the doctrine of equity, in cases of alleged trespass on land, not to restrain the use and enjoyment of the premises by the defendant when the title was in dispute, but to leave the complaining party to his remedy at law. The controversy as to the title was deemed sufficient to exclude the jurisdiction of the court. * * * This doctrine has been greatly modified in modern times, and it is now a common practice in cases where irremediable mischief is being done or threatened, going to the destruction of the substance of the estate, such as the extracting of ores from a mine, or the cutting down of timber, or the removal of coal, to issue an injunction, though the title to the premises be in litigation."

This, however, in no way disputes the rule that there must be imminent danger of irreparable injury either because of the threatened act, which, if consummated, will create a condition which would prevent the courts thereafter from restoring the original status by appropriate remedy at law either through the recovery of the property in an action for that purpose or because the trespasser would be unable to respond in damages. See, also, 32 Corpus Juris, p. 132, § 176. In Whitehead v. Shattuck, 138 U. S. 146, 11 S. Ct. 276, 277, 34 L. Ed. 873, the court clearly recognizes the right of both parties to a trial by jury where title to real estate is in question and where the action is for the recovery of real estate, including damages for withholding it. In other words, when it appears that, whatever the original form of the action, the court cannot grant equitable relief, or that the question has become a question of title and the recovery of the possession of real estate in which the law can furnish an adequate and complete remedy, the

title must be tried at law. In the last-named case, the following language is used:

"It would be difficult, and perhaps impossible, to state any general rule which would determine in all cases what should be deemed a suit in equity as distinguished from an action at law, for particular elements may enter into consideration which would take the matter from one court to the other; but this may be said, that where an action is simply for the recovery and possession of specific, real, or personal property, or for the recovery of a money judgment, the action is one at law. An action for the recovery of real property, including damages for withholding it, has always been of that class. The right which in this case the plaintiff wishes to assert is his title to certain real property; the remedy which he wishes to obtain is its possession and enjoyment; and in a contest over the title both parties have a constitutional right to call for a jury."

In the case of Ashburn v. Graves (C. C. A.) 149 F. 968, at page 971, the court used the following language:

"The jurisdiction of courts of equity to remove clouds from title is exercised for the reason that the deed, or other instrument constituting the cloud, may be used to injuriously or vexatiously embarrass the complainant's title. There are well-established limitations upon the exercise of the jurisdiction. A plaintiff having the legal title, and not in possession, will ordinarily be left to his action of ejectment. This is the familiar doctrine of the federal courts"—citing U. S. v. Wilson, 118 U. S. 86, 89, 6 S. Ct. 991, 30 L. Ed. 110; McGuire v. Pensacola City Co., 105 F. 677, 44 C. C. A. 670.

In the case of Scott v. Neely, 140 U. S. 106, 11 S. Ct. 712, 714, 35 L. Ed. 358, in discussing certain new equitable rights created by the laws of the state of Mississippi, and while recognizing the general proposition as to the enforcement of these rights in the federal courts, Mr. Justice Field stated that they were subject to the qualification that such enforcement should not impair any right conferred or conflict with any inhibition imposed, by the Constitution or laws of the United States, and the following language was used:

"In the federal courts this right [trial by jury] cannot be dispensed with, except by the assent of the parties entitled to it; nor can it be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action, or during its pendency. Such aid in the federal courts must be sought in separate proceedings, to the end that the right to a trial by a jury in the legal action may be preserved intact.

"In the case before us the debt due the complainants was in no respect different from any other debt upon contract. It was the subject of a legal action only, in which the defendants were entitled to a jury trial in the federal courts. Uniting with a demand for its payment, under the statute of Mississippi, a proceeding to set aside alleged fraudulent conveyances of the defendants, did not take that right from them, or in any respect impair it."

In the case of Clark v. Roller, 199 U. S. 541, 26 S. Ct. 141, 50 L. Ed. 300, in the plainest possible language, it is shown that, if upon a bill of partition a defendant claims paramount title and possession on grounds which give color to his claim, and against which the plaintiffs are not entitled to equitable relief, the proper course is to suspend the bill and give the plaintiffs an opportunity to sue at law. In other words, while it is recognized that partition suits are properly within the jurisdiction of courts of chancery, it is clearly recognized that such bills cannot be made the means of trying a disputed title and ousting courts of law of their exclusive jurisdiction to try issues of title, especially where the defendant claimant is admitted to be in possession and claims adversely under paramount title on grounds sufficient to give color to these claims. This case was decided in 1905, only a few years prior to the adoption of the new equity rules, and the rule was clearly enforced up to 1913. The decided case arose in the District of Columbia, and was uninfluenced by the laws or procedure of any particular state. In the instant case, while not brought for partition, the undisputed facts show that the defendants are in possession, that they claim adverse title under verified allegations sufficient to show a colorable claim, and under the decided cases they would have had a right, even prior to the adoption of the new equity rules, to have required the suspension of the equity case until the decision of paramount title should be had at law, and this is particularly true since the alleged encroachment constituting irreparable injury had been completed before the application for temporary injunction could be heard, and since there is no reason why complainant may not now have an adequate remedy at law.

In the case of Twist et al. v. Prairie Oil & Gas Co., 274 U. S. 684, 47 S. Ct. 755, 757, 71 L. Ed. 1297, decided June 6, 1927, the court discusses the distinction that must be

maintained between suits in equity and actions at law. After holding that ordinarily one out of possession may not bring in a federal court a bill to quiet title against one in possession because there is a full, adequate, and complete remedy at law, and the defendant is entitled to a jury trial (Citing Whitehead v. Shattuck, 138 U. S. 146, 11 S. Ct. 276, 34 L. Ed. 873; Black v. Jackson, 177 U. S. 349, 20 S. Ct. 648, 44 L. Ed. 801; Lancaster v. Kathleen Oil Co., 241 U. S. 551, 36 S. Ct. 711, 60 L. Ed. 1161), the court states that there are cases in which such suits have been maintained in equity because of special facts or because of the relief sought or because the defendant waived the objection of lack of equity jurisdiction. And it was held that waiver is possible because the objection to equitable jurisdiction does not go to the power of the federal court but to the merits. It was held further that under the former practice, where the plaintiff sued in equity, and it was found that there was a plain, complete, and adequate remedy at law, the bill must be dismissed. If a plaintiff elected erroneously to proceed either at law or in equity, he did so at his peril. The court says, however: "Now, under the ·Act of March 3, 1915, c. 90, § 274a, 38 Stat. 956, * * * and equity rules 22 and 23, if the suit was improperly brought in equity, either the trial court or the appellate court may transfer the case to the law side"—citing Liberty Oil Co. v. Condon Bank, 260 U. S. 235, pages 241–243, 43 S. Ct. 118, 67 L. Ed. 232. And later on in the opinion it is said: "Either the trial court or the appellate may, of its own motion, take the objection that the case is not within the equity jurisdiction."

In reviewing this case it will be observed that the court indulges in no discussion or minute interpretation of the phraseology employed in equity rules 22 and 23 (28 USCA § 723) or of the provision of section 274a of the Judicial Code as set out in chapter 90 of the Act of March 3, 1915, 38 Stat. 956 (28 USCA § 397). It be borne in mind, however, that the object of these rules as well as of the act was to prevent litigants who had mistaken their remedy from having suits in equity or actions at law dismissed on technical grounds without being permitted to have their claims finally adjudicated in such causes. While it is obvious that neither the statute nor the rules referred to were designed in any way to destroy the distinctions which have always existed between suits in equity and actions at law, it must be remembered that the intention of the Supreme Court and of Congress was,· by provisions of a highly remediable nature, to avoid delays or miscarriages of justice, and in the interpretation of such provisions the courts should give them a liberal construction in order that these purposes may be acomplished. Equity rule 22 (28 USCA § 723), provides:

"*If at any time it appear* that a suit commenced in equity should have been brought as an action on the law side of the court, it shall be forthwith transferred to the law side and be there proceeded with, with only such alteration in the pleadings as shall be essential." (Italics ours.)

On principle it would seem, therefore, that it was not intended to limit transfers under this rule to cases in which the bill itself might fail to contain sufficient allegations to present a case for equitable relief, but also to enable this to be done where issues subsequently raised by the pleadings, or where the admitted or established facts of the case as they might be presented in the cause, showed the real nature of the case to be one at law. This is plainly manifested by the provisions of section 274a of the Judicial Code (28 USCA § 397), which, in providing for the transfer, preserves testimony taken prior to the time at which the courts might find that complainant had mistaken his remedy. Any other view would require such narrow construction of remedial rules and statutes as would defeat the very purpose for which they were enacted. Taken in connection with the statute and rule 22, and in view of the decisions of the courts under the previous practice and laws, I am strongly inclined to the opinion that it was the intention of rule 23 to provide for the trial of issues of fact, arising in an equity cause and triable as of right under the Constitution by jury, as at law without the necessity of transferring the entire cause in which equitable relief might be obtained, dependent upon complainant's success before the jury as in matters of fact, and that in such cases the courts should consider the allegations of the answer itself as sufficient without amendment to carry such special issue to the jury at law. Any other interpretation of the rule would limit the procedure, where the whole case should not be transferred, to that existing prior to the adoption of the new rules, and would require the suspension or dismissal of the equity suit until the issue at law had been disposed of in a separate suit.

Such is the construction of this rule by our own Circuit Court of Appeals in the

case of Colleton Mercantile & Mfg. Co. et al. v. Savannah River Lumber Co., 280 F. 358, 362, in which the opinion was delivered by the late Judge Woods and the rule stated with his usual clearness and ability. In that case suit was instituted to enforce specific performance of a contract for the sale of standing timber and to remove cloud from title. There was joined as a defendant with W. B. Gruber, the alleged owner of the land, and from whom the contract had been obtained, the Savannah River Lumber Company, claiming some interest in the premises by which cloud was cast upon the title. It was held that, since it would be a hardship to require the complainant to pay Gruber and take his title, with the claim of the Savannah Company outstanding, or to lose its bargain, and since it had no power to require Gruber to sue the Savannah Company for possession, it could obtain adequate relief only by bringing in both adverse claimants and having their rights adjudicated. Under these facts the court said:

"The Savannah Company has, of course, a right of trial by jury on the issue of its title to the property. Under the old practice, if in a suit in equity the defendant set up an adverse legal title to the subject of the action, as in a suit for partition where one of the defendants set up title by adverse possession, the practice was to suspend the equity suit until the plaintiff could bring his action at law. Clark v. Roller, 199 U. S. 541, 546, 26 S. Ct. 141, 50 L. Ed. 300; Gilbert v. Hopkins (C. C.) 171 F. 704. But that would give the plaintiff here no relief, since it could not recover in a law action; nor require Gruber to test his title in a law action.

"The real dividing line between law and equity under the Constitution is the line between controversies triable by jury under the common law of England and those not so triable as a matter of right. Root v. Railway Co., 105 U. S. 189, 206, 26 L. Ed. 975. The District Court is a court of law and equity. The judge performs his functions as a judge of both courts concurrently. The only mechanical difference is separate dockets and records. Juries are impaneled and used in both courts, heretofore in the court of equity to enlighten the conscience of the judge as to an issue of fact. Equity rule 23 (198 F. xxiv, 115 C. C. A. xxiv) now provides:

" 'If in a suit in equity a matter ordinarily determinable at law arises, such matter shall be determined in that suit according to the principles applicable, without sending the case or question to the law side of the court.'

"We think this rule means that, where in an equity case a matter triable by jury arises, the court shall not refuse to try it, and shall not go through the form of sending it to the law side of the court, but shall determine it according to all the principles applicable—one of which is the right of trial by jury. Under rule 22, if the case is essentially a law case improperly brought in equity, it must be transferred to the law side. Under rule 23, if the case, looked at as a whole, is an equity case, but a question arises in it triable by jury, a jury trial is held to settle the legal issue without transfer. When the legal issue has been settled by the verdict of the jury, the court adjudicates the equitable issues in the light of the verdict."

The foregoing case was quoted with approval by Judge Garvin in the case of Van Wagenen v. Reed Co. et al. (D. C.) 287 F. 145, at page 147. It is contended by complainant's counsel that the language used by Judge Woods in the case just cited is obiter dictum. It related, however, to a fundamental right in the case, is sound in principle, and, being adopted unanimously by the appellate court, by whose decisions on all matters in point I am controlled, I have no hesitation in adhering to it unless and until a contrary rule be announced by the Supreme Court.

As suggested above, equity rules 22 and 23 (28 USCA § 723), as well as section 274a of the Judicial Code (28 USCA § 397), were adopted in the light of past experiences and decisions of the courts, and with the evident purpose of securing a prompt and economical determination in one case of all issues that might arise under the pleadings and in the progress of a case. I can see no reason whatever for the adoption of rule 23 except to provide for a trial at law without the transfer of the entire case from the equity side as under rule 22 in any case where there might be presented by one of the parties an issue which must be tried by jury. Before the adoption of the new rules, when this happened, it either became necessary to dismiss the entire bill without prejudice or to suspend it until by a separate action at law the legal issues such as that of title could be determined. It will be observed that the Supreme Court in the case of Twist v. Prairie Oil & Gas Co., supra, states that both under rule 22 and rule 23 either the trial court or the appellate court may transfer the case to

the law side. This plainly contradicts the idea that the rule requires or permits such issues where demandable as of right to be tried by a jury subject to the principles prevailing in equity. It seems, therefore, that a proper construction of the language of the Supreme Court is that it means that the issue rather than the whole case shall be transferred to the law side, and it is the more evident that such construction is proper because, where the issue is properly raised by the answer, no amendment of the bill is necessary to enable the court to present the issue to a jury at law. In conclusion, it should be stated that the decision which has been reached in the instant case should not be construed as in any way denying the right of a court of equity to pass upon issues, ordinarily triable by jury in a law action as at common law, where such issues are merely incidental to the granting of equitable relief. In other words, this decision rests upon the law governing the specific facts presented in the case under consideration. I have heretofore by minute order directed the clerk to docket the cause upon the law calendar for the trial at law of the question of title. For the present, the equity cause will be retained, but further proceedings under it suspended until the jury has rendered its verdict.