## Stout, Appellant, *v.* Williams.

*Equity—Ejectment bill—Real estate.*

Where a building is conveyed to trustees for the use of a Grand Army Post, and the deed also provides that certain other organizations may have meeting places in the building subject to reasonable regulations by the Grand Army Post, one of such organizations is not entitled to a preliminary injunction to restrain the post from interfering with such organization in the use of a particular room, where it appears that the organization had refused to take a lease from the post for such room and refused to pay for the use of the furniture therein which belonged to the post and for the light and heat, and that the post had thereupon leased it to another association.

Argued Jan. 27, 1902. Appeal, No. 305, Jan. T., 1901, by plaintiff, from decree of C. P. Luzerne Co., Oct. T., 1901, No. 5, refusing preliminary injunction in case of Charles I. Stout, Charles A. Herring and G. B. Snyder, Camp Council of Col. T. C. Harkness Camp No. 169 Sons of Veterans v. George Williams, P. L. Hoover and Adam Zimmer, executive council of Conyngham Post No. 97 Grand Army of the Republic. Before McCollum, C. J., Mitchell, Brown, Mestrezat and Potter, JJ. Affirmed.

Bill in equity for an injunction.

The principal prayer of the bill was as follows: " That defendants be restrained from any further hindering or obstructing the Harkness Camp in the free use as a meeting place of the hall of the Memorial Hall Association of Ely Post, No. 97 G. A. R. Department of Pennsylvania, at the time and in the manner it has heretofore used the same during the existence of said hall, and also from in any wise molesting or interfering with the said camp in such use of the said hall."

On motion for preliminary injunction, Ferris, J., filed the following opinion :

1. Conyngham Post No. 97 Department of Pennsylvania Grand Army of the Republic was incorporated under the laws of this commonwealth on September 2, 1890, " for benevolent and charitable purposes, and particularly for aiding and assisting old soldiers and sailors who served on the side of the Union in the war of 1861–1865 and their widows and orphans, . . . . and in order that it may legally hold and .manage in fee or in trust such real properties, securities and moneys as may from time to time be accumulated by donation or otherwise under the laws of the commonwealth for carrying out the said purposes."

This corporation is the successor of Ely Post No. 97 G. A. R. which had been previously incorporated.

2. By deed dated July 29, 1891, acknowledged August 8, 1891, and recorded February 15, 1892, Charles A. Miner and Eliza R. Miner, his wife, in right of said wife, conveyed to " Oliver A. Parsons, Charles B. Sutton and Edward Welles, . . . . trustees for the association styled Conyngham Post No. 97

Grand Army of the Republic, Department of Pennsylvania," the undivided one-half interest in the land fronting on South Main street, Wilkes-Barre, upon which stands the " Memorial Hall" building, a room in which is the subject of this controversy. The habendum clause of this deed states that the property is to be held by the said trustees, their successors, heirs and assigns " in trust, however, for the said association, styled Conyngham Post No. 97, Grand Army of the Republic, for the use of said post, and for the erection and maintenance thereon of a Memorial Hall, commemorative of the sacrifices made by our soldiers and sailors in the war for the Union. The same to be used in whole or in part as a meeting place of said post, and the Conyngham Woman's Relief Corps, Number 37, Auxiliary to the Grand Army of the Republic, and T. C. Harkness Camp No. 169 Sons of Veterans, shall also have the free use of said Memorial Hall, and be provided with a suitable meeting place therein during their existence as organizations, as now constituted, subject however, to such reasonable regulations as may be provided by said Conyngham Post, during its existence, and thereafter subject to the reasonable regulations of said trustees and their successors. Not limiting, however, the power of said post during its existence and of said trustees afterwards from using said lot of land and the Memorial Hall building thereon in any manner consistent with the purposes of said Memorial Hall as aforesaid for the purpose of providing a revenue therefrom . . . . the income from said property beyond the amount necessary for defraying the expenses of said erection and maintenance shall be used by said post and relief corps to help aid and assist needy and destitute persons, etc. It being intended that said Memorial Hall building and lot of land and property thereon shall and may be used only for such purposes other than for said post, Conyngham Woman's Relief Corps and said Camp of Sons of Veterans, as aforesaid, as will be lawfully productive of an income or revenue therefrom," etc. The deed, inter alia, further invests the trustees with a power of sale by and with the consent of the said post during its existence, under approval and decree of this court, directs how proceeds of such sale shall be used, provides for filling vacancies on the board of trustees by the court upon nomination by the post so that (during its existence) two of the board shall be members

of the post and the other a citizen of the county not a member of the post.

3. The only interest, legal or equitable, of the Col. T. C. Harkness Camp No. 169 Sons of Veterans in the " Memorial Hall " property, or any part thereof, which the evidence discloses is that shown by the deed above mentioned. There is no evidence that the " Memorial Hall Asssociation of Ely Post No. 97 Grand Army of the Republic Department of Pennsylvania," the charter of which is set forth in the plaintiffs' bill, has or ever had any title to, control over or interest in the property here in question.

4. The Conyngham Post, in pursuance of the general control of the property vested in it by the trust deed aforesaid, and within the limitations therein expressed, have paid the running expenses of the building, such as light, heat, janitor service, etc., and for the purpose of raising revenue have leased portions of the building to various organizations, including a lease of the large room known as the " G. A. R. Room," to " The International Association of Machinists " for the current year, for two Tuesday nights in each month, these being two of the four nights in each month on which the Sons of Veterans had formerly used the room as a meeting place. This lease was made after the Harkness Camp had failed or refused to enter into a lease with the Conyngham Post for the use of the room in question as a meeting room, for a year from April 1, 1901, which form of lease contained an agreement by the camp to pay the Conyngham Post the sum of " one hundred and twenty-five dollars. The same to be paid for the use of furniture (owned by the post) heat and light in room now occupied by Conyngham Post No. 97 G. A. R." After the lease to the International Machinists had been made, the Harkness Camp, by its officers, verbally offered to pay the post the sum of $125 for use of furniture, light, heat and janitor's service, upon the post's permitting them to occupy the said room on every Tuesday night in the month. The post through its officers replied that this could not be done, as the room was already leased to the machinists for two Tuesday nights in each month, but the counter offer was made, subject to its acceptance within five days, that the post would allow the camp to use the room on the second and fourth Tuesday evenings of each month, those

being the only nights for which it was not already rented—the camp to sign a lease at an annual rental of $62.50 " for the use of furniture, heat and light." This offer was not accepted, but this proceeding was instituted instead.

Under the facts above found, the controlling question in the case would seem to be whether the requirement that the Harkness Camp as lessee, enter into a written lease with the Conyngham Post as lessor, wherein the room should be designated which the lessee should have the right to use as a meeting place, the times when it should be so used, and also containing a stipulation for the payment of a sum certain as compensation for use of the post's furniture and for light, heat and janitor's service, is a reasonable regulation, " subject " to which (and not otherwise) the Sons of Veterans are required to be " provided with a suitable meeting place " in Memorial Hall.

This question we decide in the affirmative. Under its charter and the deed of the premises the general control of the property in matters pertaining to its use is vested in the Conyngham Post during its existence. It is only stipulated, so far as the plaintiffs are concerned, that such control be exercised in a reasonable manner. We see nothing in the charter of the post nor in the trust deed, whether construed strictly or liberally to prohibit the post from requiring from the camp its assent to a writing by which the latter is " provided with a suitable meeting place " and stating where it should be and when it should be used, whether that writing be called a lease or by some other name. Neither do we regard it as unreasonable that such writing should contain a stipulation that the camp pay a compensation for the use of furniture, light, heat, etc., conceded to be reasonable in amount.

Neither should the rights of the " International Association of Machinists " be lost sight of. This organization has in a lawful manner acquired a legal right to the possession of the room in question for two of the four nights in each month on which the plaintiffs demand it. To make the injunction asked for effective, the machinists must be ousted from possession and the Sons of Veterans put in. The proceeding is in effect an ejectment bill. A court of equity is virtually asked in an injunction proceeding to deprive an innocent third party of

actual, and the defendants of constructive, possession of real property. Injunction is not considered the appropriate remedy to that end, where, as here, the plaintiffs' right of possession is the subject of controversy: Tillmes v. Marsh, 67 Pa. 507; Brown's Appeal, 62 Pa. 17; High on Injunctions, sec. 355.

Being of opinion that the plaintiffs have not shown that clear right, with no adequate remedy at law for its invasion, which alone would justify the interposition of a court of equity by way of injunction (Clark's Appeal, 62 Pa. 447; Minnig's Appeal, 82 Pa. 373), and believing moreover, that the granting of the injunction would be productive of greater injury than its denial (Wahl v. Methodist Episcopal Cemetery Assn., 197 Pa. 197; Richards's Appeal, 57 Pa. 105), we think the injunction now asked for should not be granted. We therefore conclude, as matter of law, that the plaintiffs are not at this time entitled to the equitable relief prayed for.

The motion for a preliminary injunction is denied.

*Error assigned* was the decree of the court.

*A. Ricketts*, for appellant.

*P. H. Campbell*, for appellee.

PER CURIAM, May 26, 1902:
We are all of the opinion that no error was committed by the learned judge of the court below in refusing to grant the special injunction prayed for.