CITY OF BOZEMAN, RESPONDENT, *v.* BOHART, APPELLANT.

(No. 2,898.)

(Submitted November 18, 1910. Decided December 6, 1910.)

[112 Pac. 388.]

*Unlawful Detainer—Injunction Pendente Lite—When Proper—*
*Municipal Corporations—Disposition of Garbage—Nuisances—*
*Insolvency—Complaint—Sufficiency.*

Temporary Injunction—When Proper.
  1. *Held,* that injunction lies in aid of an action for unlawful detainer, even though such action is summary and usually speedy and adequate to oust defendant from his unlawful possession, where, owing to the peculiar character in which the property is intended to be enjoyed, or where the rights obstructed by defendant are of such a nature that the damages sustained are incapable of computation in money, provisional relief is imperatively necessary to preserve the subject of litigation until final judgment.

Injunction—Repetition of Trespasses.
  2. Relief by way of injunction may be granted to protect the owner of land against a repetition of wanton trespasses for which adequate compensation cannot be given by way of damages.

Same — Municipal Corporations — Disposition of Garbage — Interference With.
  3. A city leased certain lands owned by it, and lying about a mile from its limits, to defendant for agricultural purposes, reserving to itself a small portion thereof for dumping ground of its garbage, burial of dead animals, etc., and making it the duty of the lessee, as part consideration for the contract, to make speedy disposition of such refuse, the employees of the city to have free access to the land at all times for dumping purposes. The lessee having failed to perform the duties imposed upon him by the agreement, the city abrogated it, and brought an action for unlawful detainer, and as ancillary relief asked that pending suit, defendant be enjoined from interfering with its agents and employees in the use of the land reserved for the purposes indicated. *Held,* under the rule declared by paragraph 1 above, that the district court properly granted an injunction *pendente lite.*

Same—Insolvency—Complaint—Sufficiency.

   4.  The damages likely to result to plaintiff city from the wrongful
acts of defendant in interfering with its employees in the speedy dis-
position of the garbage, dead animals, etc., during the heat of the
summer, and thus endangering the health of its inhabitants, having
been such as to be incapable of measurement in money, the absence of
an allegation in the complaint that defendant was insolvent did not
render the pleading insufficient to warrant the granting of a temporary
injunction.  Under such circumstances injunctive relief was proper,
irrespective of the financial condition of defendant.

*Appeal from District Court, Gallatin County; W. R. C. Stew-
art, Judge.*

ACTION by the City of Bozeman against Seth E. Bohart.
From an order denying a motion to dissolve a temporary in-
junction, defendant appeals.  Affirmed.

*Mr. John A. Luce,* in behalf of Appellant, submitted a brief
and argued the cause orally.

It is the universal rule that a court of equity will never in-
terfere where there is a plain, speedy and adequate remedy at
law.  The plainest, speediest and most adequate remedy at law
exists under the forcible entry and detainer act.  It is sum-
mary in its nature.  It lies with the plaintiff alone in such a
case to force it to a speedy conclusion.  It has been held that
this remedy for unlawful detainer is exclusive.  (See *Tomlinson*
v. *Rubio,* 16 Cal. 203; *Laughlin* v. *Fariss,* 7 Okl. 1, 50 Pac. 254;
*Black* v. *Jackson,* 177 U. S. 361, 20 Sup. Ct. 648, 44 L. Ed. 806;
*Cope* v. *Braden,* 11 Okl. 291, 67 Pac. 475.)  In *Hipp* v. *Babin,*
19 How. (U. S.) 271, 15 L. Ed. 633, the court said "that when-
ever a court of law is competent to take cognizance of a right,
and has power to proceed to a judgment which affords a plain,
adequate, and complete remedy, without the aid of a court of
equity, the plaintiff must proceed at law, because the defend-
ant has a constitutional right to a trial by jury."  (See, also,
*Killian* v. *Ebbinghaus,* 110 U. S. 568, 4 Sup. Ct. 232, 28 L. Ed.
246; *Root* v. *Lake Shore & M. S. R. Co.,* 105 U. S. 189, 26 L. Ed.
975; *Buzard* v. *Houston,* 119 U. S. 346, 7 Sup. Ct. 249, 30 L.
Ed. 451.)  Equity will never permit its writs to be used to
turn out one who is in possession.  (1 High on Injunctions, 2d

ed., 355; *People* v. *Simonson,* 10 Mich. 335; *Harris* v. *McClung,* 10 Okl. 701, 64 Pac. 4.)

No facts showing that any great or irreparable injury was caused by the occupancy of the defendant having been made to appear, the injunction should have been refused. (16 Am. & Eng. Ency. of Law, 2d ed., 360.) The continuance of possession under a lease as alleged in plaintiff's complaint could in no way constitute any injury, much less irreparable injury. (22 Cyc. 762, and cases cited; *Hagen* v. *Beth,* 118 Cal. 330, 50 Pac. 425.)

There was no allegation that the defendant was insolvent or unable to respond in damages. This, under the circumstances, was a necessary allegation. (*Gardner* v. *Stroever,* 81 Cal. 148, 22 Pac. 483, 6 L. R. A. 90.)

In behalf of Respondent, *Mr. George Y. Patten* filed a brief and argued the cause orally.

The injunction here must be sustained, if at all, upon the grounds (1) that the respondent had never unqualifiedly surrendered the possession of the demised premises, but had expressly reserved the use and enjoyment thereof as a "dump ground"; and (2) the necessity for the preservation of sanitary conditions in the city of Bozeman, and the protection of the health of its inhabitants, which were threatened by the trespass of appellant upon respondent's use and enjoyment of said premises, and respondent's expulsion therefrom by appellant.

When appellant excluded respondent from the use and enjoyment of the portion of the premises used as a dump ground, he was as much a trespasser as respondent would have been had it excluded appellant from the use of the cultivated ground. Equity will protect a complainant in possession from trespass by injunction. (22 Cyc. 830.) If equity will enjoin interference with the use of property for religious worship, as was done in *New Elm German Evangelical Congregation* v. *Hoessli,* 13 Wis. 348, *a fortiori* it will not permit the public to be devested of the use and enjoyment of premises when the health of the

inhabitants of a city would thereby be endangered. Acts which are a menace to the health or safety of the public will be enjoined. (22 Cyc. 897, 898.)

In the case of *First Evangelical Church* v. *Walsh,* 57 Ill. 363, 366, 11 Am. Rep. 21 (quoted in note, 22 Cyc. 831), it is said: "What, we may ask, would be the measure of damages at law, for the wounded sensibilities of the living in having the graves of kindred and loved ones blotted out and desecrated by common highway travel? The inadequacy of a remedy at law is too apparent to admit of argument." Surely the health of a community should be as jealously guarded as the sanctity of the resting places of its dead. The word "irreparable" means that which cannot be repaired, restored or adequately compensated for in money, or where the compensation cannot be safely measured. (*Bettman* v. *Harness,* 42 W. Va. 433, 26 S. E. 271, 36 L. R. A. 566, 18 Morr. Min. Rep. 500; *Hodge* v. *Giese,* 43 N. J. Eq. 342, 11 Atl. 484; 22 Cyc. 830.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This is an action for unlawful detainer, and, incidentally, for equitable relief by way of injunction pending the litigation.

On May 26, 1909, the plaintiff city and the defendant entered into the following contract, which is attached to and made a part of the complaint:

"This agreement, made and entered into this twenty-sixth day of May, 1909, by and between the city of Bozeman, a municipal corporation of the state of Montana, the party of the first part, and Seth E. Bohart, of the county of Gallatin, state of Montana, the party of the second part, witnesseth:

"That the party of the first part, for and in consideration of the rents, issues, covenants, and agreements hereinafter mentioned, has demised, leased, and let, and by these presents does hereby demise, lease, and let unto the party of the second part, the following described premises situate in the county of Gallatin, state of Montana, to-wit: That certain piece and parcel

of land lying about a mile north of the city of Bozeman, known as the city dump ground, excepting however therefrom one-half acre in the southwest corner to be used by the city as a pest-house site.

"To have and to hold the above-rented premises to the party of the second part during the full term of two years from the twenty-sixth day of May, 1909, unless terminated as hereinafter provided before said date.

"Said premises are leased to said party of the second part by the party of the first part on the expressed conditions, covenants and agreements as follows:

"The party of the first part reserves the use of said ground for the burial of all dead animals from within the limits of the said city of Bozeman, for the dumping of all manure, rubbish, garbage and other refuse matter, and for any other dumping which it may desire.

"The party of the second part agrees to bury all dead animals brought there by the city free of charge, and to be there every day and superintend the burying of all dead, and the deposit of all manure, rubbish, garbage and other refuse matter that may be brought there, charging others than the city for burying large dead animals not to exceed $1.00 per head, and small animals not to exceed twenty-five cents per head, and in case such parties bury their own dead animals on bringing them there, then to make no charge.

"The party of the second part further agrees to keep sufficiently clear and easy of access a sufficient tract of said ground for the burying of dead animals and for the dumping of said manure, rubbish, garbage and other refuse matter as may be designated by the Public Buildings and Grounds Committee of the party of the first part; and further agrees to designate the place of the burial of all dead animals, and the dumping of all refuse matter, and to see that all animals are buried within twenty-four hours from the time of being deposited on said grounds; and further agrees not to remove, or permit to be removed, from said grounds any sand or other deposits, without the written permission of said committee, above named.

"It is further agreed that the party of the first part shall be at no expense whatever for repairs or improvements on said grounds during the term of this lease, and the party of the second part has the right to remove all improvements in the way of buildings and fences placed by him on said grounds at the expiration of this lease, provided that the party of the second part shall put the fences now on said premises in good repair, and maintain them in good repair during the term of this lease, and shall not be permitted to remove any new fencing or repairs thereon.

"It is agreed by the party of the first part that the party of the second part shall have all crops produced by him on the cultivated land of said premises for each of the crop seasons of 1909 and 1910, which shall be the full consideration for the proper care and superintendence of said grounds as herein provided, and shall have no other compensation therefor.

"It is further agreed between the parties hereto that should the party of the second part fail to comply with any of the conditions, covenants or agreements herein contained, then and in that event this lease shall at once terminate, and the party of the first part shall have the right to re-enter and take full and absolute possession of said premises, and all thereof; and it is expressly made a condition of this lease that the party of the second part shall not assign this lease, nor sublet said premises, or any part thereof, and that he shall at the expiration of said term or sooner termination of this lease, quietly yield and surrender possession of the said premises, and all thereof, to the party of the first part.

"In witness whereof, the party of the first part, by resolution of its council duly passed, has caused this agreement to be executed by its mayor and city clerk, and the seal of said city to be hereto affixed, and the party of the second part has hereunto set his hand."

In pursuance thereof, the defendant entered into possession of the premises, and continued therein until the commencement of this action. As ground for equitable relief, the complaint alleges, in substance, that since May 26 the defendant has failed

to be upon the premises every day during business and working hours to superintend the burial of animals, the dumping of manure, garbage, etc.; that he has failed to bury all dead animals as by the contract he was required to do; that he has in some instances permitted dead animals conveyed upon the premises by the city to remain unburied for as many as ten days and to be eaten by hogs; that in other instances numbers of dead animals have been allowed to remain exposed for more than twenty-four hours awaiting burial; that he has buried with a light covering of manure only some which afterward had to be burned; that in other instances the bodies have been burned; and that all of these had been deposited upon the premises after the defendant went into possession and prior to August 5, 1909. It is further alleged that frequent demands have been made upon the defendant to comply with his contract, but that he has refused to do so, and that at a meeting held on August 5, 1909, it was determined by the city council by resolution, on recommendation of its committee on buildings and grounds, to terminate the contract, and that the defendant has, in pursuance of this determination, been duly notified in writing by the mayor and required to quit the premises within three days, exclusive of the date of service of notice, but that he has failed to do so. The complaint then continues:

"(9) That the said lands and premises herein mentioned and described are held, occupied, and used by the plaintiff and its inhabitants as a dump ground for the burial of dead animals, and the deposit of manure, rubbish, garbage, and other refuse matter from the streets, alleys, and private premises within the said city of Bozeman, and is the only place conveniently accessible from the said city of Bozeman where the said city of Bozeman and its inhabitants may take such dead animals, manure, rubbish, garbage, and other refuse matter, and that the same is situated within less than a mile of the limits of the said city of Bozeman, and near a public and main traveled highway; that the use and occupation of said lands and premises as such dump ground and for the purposes aforesaid, and the control

thereof, by the plaintiff, is necessary that it may discharge its public duties in the protection and preservation of the health of its inhabitants, and the maintenance of sanitary conditions in said city; that the defendant is now in the occupation of said lands and premises, and has excluded the plaintiff and its officers, agents, and employees therefrom, and threatens to and will, unless restrained by this honorable court, continue to so occupy the same and exclude the plaintiff and its officers, agents and employees therefrom; and that, if the plaintiff is deprived of the use, occupation, and enjoyment and control of the said lands and premises, great and irreparable injury will be suffered by the said city of Bozeman and its inhabitants for which pecuniary compensation would not afford adequate relief, and that the plaintiff has not any plain, speedy, or adequate remedy in the ordinary course of law.''

The prayer is for a judgment for restitution of the premises, with damages, and for an injunction *pendente lite* restraining the defendant from interfering with plaintiff's occupancy and use and enjoyment of them. Upon the filing of the complaint the district judge issued an injunction requiring the defendant, his agents, servants, and employees, and all others acting in his aid or assistance, to ''refrain from in any wise interfering with the occupation, use, and enjoyment of the plaintiff and its officers, agents, and employees, of those certain lands, premises situated,'' etc., describing them. Thereafter the defendant moved for a dissolution of this order. The motion was denied. Hence this appeal.

The several contentions made by counsel for defendant are all involved in the general inquiry: Does the complaint state a case which authorizes the issuance of an injunction? It is said that an action for unlawful detainer is plain, speedy and adequate, and hence that an injunction will not lie in aid of it. This form of action is summary in its nature, and usually is speedy and adequate to oust the defendant from his unlawful possession. But the character of the particular action is not determinative of the question whether the court should grant

provisional relief pending settlement of the main controversy. Even though in a given case the trial can be speedily had and the plaintiff be successful, yet the defendant has the right of appeal, and his conduct may in the meantime be such that provisional relief is imperatively necessary to preserve the subject of the litigation or the mutual rights of the parties until final judgment. For illustration: The defendant, being in a position to do so, may so use the property as to injure the inheritance or destroy it in the character in which it is intended to be enjoyed, or the rights obstructed by him may be of such a character that damages for obstructing them cannot be computed in money. In such a case the damages awarded in the final judgment would not compensate the owner for the accruing loss, and to deny him provisional relief to preserve the *status quo* would be equivalent to a declaration that there are wrongs for which the law furnishes no remedy. The general rule is that, when the court is competent to take cognizance of a legal right and has power to proceed to judgment which affords adequate relief without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right to a trial by jury. (*Hipp* v. *Babin,* 19 How. 271, 15 L. Ed. 633; *Whitehead* v. *Shattuck,* 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873; *Black* v. *Jackson,* 177 U. S. 349, 20 Sup. Ct. 648, 44 L. Ed. 801; *Hayward* v. *Andrews,* 106 U. S. 672, 1 Sup. Ct. 544, 27 L. Ed. 271; *Cope* v. *Braden,* 11 Okl. 291, 67 Pac. 475; *Laughlin* v. *Fariss,* 7 Okl. 1, 50 Pac. 254; *Tomlinson* v. *Rubio,* 16 Cal. 203; 22 Cyc. 828.) But it does not follow that, because the main relief sought is legal and that the defendant is entitled to a jury trial upon the legal issues in the case, the equitable jurisdiction of the court may not be invoked to preserve the subject of the action until the legal issue can be determined.

Under the contract between the parties, the plaintiff reserved the right of entry upon, and occupancy of, a portion of the land leased, for the purpose of dumping garbage and manure, and also for the deposit of dead animals for burial by the defendant. In making the reservation, it retained the right to make

use of the property as theretofore, so far as it deemed it necessary to serve the convenience and preserve the health of its inhabitants. The defendant, to the extent to which his services are required to superintend the deposition of the garbage and to bury the dead animals, became the employee of the city. He was bound under his contract, not only to allow the city authorities free access to the premises, but also to render substantial service to the city. The right reserved is a substantial and continuing one, not inconsistent at all with the right of occupancy by the defendant for his own purposes, and the plaintiff has the right to protect and enforce it even though it were not seeking to terminate the lease, and recover the exclusive possession of the premises. It may be conceded that performance of the services stipulated for cannot be enforced by injunction. But, by interfering with this right of entry for the purpose for which the reservation was made, the defendant became a wanton trespasser, and, by continuing his conduct, brought himself clearly within the rule recognized and applied by this court in the case of *Lee* v. *Watson*, 15 Mont. 228, 38 Pac. 1077, that relief will be granted by injunction to protect the owner of land against a repetition of wanton trespasses for which adequate compensation cannot be given by way of damages. The fact that the circumstances of the case are novel and unusual is no reason why relief should be denied.

The case of *Trustees of German Evangelical Congregation of New Elm* v. *Hoessli*, 13 Wis. 388, involved a controversy between rival trustees over the right to control the property and temporalities of a religious society. In disposing of a contention that a court of equity will not interfere by injunction to prevent a private trespass, the court said: "The general rule undoubtedly is that in cases of private trespass an injunction would not be granted, for the reason that the aggrieved party had an adequate common-law remedy by action, where proper damages could be assessed by a jury. In ordinary cases this was found to be sufficient for the protection of property. 'But in cases of a peculiar nature, where the mischief was irremedi-

able, which damages could not compensate, or where the injury reached to the very substance and value of the estate, and went to the destruction of it in the character in which it was enjoyed,' then courts of equity would grant an injunction to prevent the injury complained of. [Citing cases.] Now, it must be admitted that the circumstances of this case are so special, the nature and use of the property itself are so peculiar, that an ordinary action of trespass would furnish no adequate compensation for an injury to the possession; for would any mere pecuniary damages furnish any compensation to a religious society for repeated and constant acts of trespass upon its property and temporalities? Most clearly not. The entire value of such property consists in its free and undisturbed use and enjoyment for religious worship. Considering, therefore, the nature of this property, the use and purpose to which it is dedicated, the mischief arising from acts of trespass upon it, and the insufficiency of the ordinary legal remedies, we must say that in our opinion the complaint states a proper case for an injunction.''

So here, considering the peculiar character of this property and the rights reserved under the contract, the fact that the city has not and cannot acquire any other place to make proper disposition of its garbage and dead animals found within its limits during the heat of the summer, and thus minister to and preserve the health and comfort of its inhabitants, can it be said that there is any proper measure of damages by which the city can be compensated for the unlawful interference with its right by the defendant? In our opinion this question must be answered in the negative. These facts bring the case within the statute. (Revised Codes, sec. 6643.) Furthermore, it is within the knowledge of everyone that dead bodies left exposed during the summer season contaminate the air with offensive odors, and become hatching places for communicable diseases. It is also well known that accumulations of garbage produce like results and are a fruitful source of contamination and sickness. It is therefore imperatively necessary that prompt and effective dis-

position be made of both by those upon whom is cast the duty to do so by law or the ordinances of a city to preserve the health and comfort of the inhabitants. The course pursued by the defendant resulted in the maintenance of a public nuisance which the plaintiff had a right to have abated by injunction. (Revised Codes, sec. 6865.)

But it is said that it does not appear from the complaint that the injury will be irreparable, because it is not alleged that the defendant is insolvent. In the final judgment, damages may be awarded for the rental value of the property, but as we have said, there is no standard by which can be measured the damages which the plaintiff will suffer by having its necessary sanitary work interrupted, and being deprived, pending the litigation, of its means of protecting the health and comfort of its inhabitants. In such cases the ability of the defendant to respond in damages is not material. Manifestly, if the damage resulting from the interference with plaintiff's right cannot be measured in money, in the very nature of the case, it is unimportant what the financial condition of the defendant is. (High on Injunction, sec. 697.)

It will be observed that the order does not oust the defendant from possession of the premises. It merely requires him to refrain from interfering with the occupation, use and enjoyment of the plaintiff and its employees, thus preserving the right of entry and occupancy to the extent to which it was reserved in the contract.

The order is affirmed.

*Affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.