BLINN et al., Appellants, v. HUTTERISCHE SOCIETY OF WOLF CREEK et al., Respondents.

(No. 4,705.)

(Submitted September 27, 1920. Decided November 29, 1920.)

[194 Pac. 140.]

*Temporary Injunction — Motion to Dissolve — General Order Dissolving—Effect—Appeal—Theory of Case—Contracts of Sale—Real Property—Leases—Construction—Growing Crops —Landlord and Tenant.*

Temporary Injunction—Effect of General Order Dissolving.
1.  A general order of the district court dissolving a temporary injunction was in effect a finding in favor of defendants upon all material matters in dispute and conclusive on appeal, the evidence not preponderating against it.

Same—Does not Lie for What Purpose.
2.  Injunction does not lie to oust one from and place another in possession of lands.

Contracts of Sale—Lands—How Enforceable Lease to Vendor may be Created.
3.  Where a contract of sale of lands contained a provision for the execution of a lease of some of them by the buyer to the seller under terms embodied in the contract and to be thereafter reduced to a formal writing, an enforceable contract of lease was created though the writing was never executed.

Same—Leases—How to be Construed.
4.  In construing the provisions for a lease, the courts will look to the practical construction given it by the parties themselves, rather than to the particular phraseology employed; hence where parties to a contract treated it as though it created the relationship of landlord and tenant, it will be treated as a lease and not as an option for one.

Same—Lands—Landlord and Tenant—Tenant at Will—Title to Crops.
5.  Where the buyer of lands permitted the seller to remain in possession of certain portions of and cultivate them, and treated him as a tenant, the latter was at least a tenant at will and as such entitled to the crops sown and cultivated by him.

Temporary Injunction—Motion to Dissolve—Theory of Case—Appeal.
6.  Where plaintiffs asked for the dissolution of a temporary injunction on the ground that they were and defendant was not entitled to possession of the lands in controversy and assumed the burden of showing that they were entitled to the injunction, they could not on appeal change their theory and urge that the trial court erred in not modifying and continuing it in force as to the lands held by plaintiff under an alleged lease.

Same—Motion to Dissolve—Question for Decision.
7.  On motion to dissolve an injunction before trial upon the merits, the question before the court is whether, upon all the facts disclosed at the hearing, the court should have granted the injunction in the first instance.

Same—Motion to Dissolve—Assumption of Burden of Proof—Failure to Sustain Burden—Appeal—Theory of Case.

8.  Where plaintiffs, on the hearing of defendant's motion to dissolve a temporary restraining order, voluntarily assumed the burden of showing that they were the owners in fee of lands, the crops growing on which defendant claimed under an alleged lease, and that therefore they were entitled to the injunction, they were responsible for uncertainty in the evidence respecting the issue, and in no position to urge on appeal that the injunction should have been modified instead of dissolved.

Same—Motion to Dissolve—Merits of Case not to be Determined.

9.  On motion to dissolve a temporary restraining order, it is not the province of the district court, nor that of the supreme court on appeal from an order dissolving it, to determine finally any matter which may arise upon a trial of the merits of the case in which it was issued.

*Appeal from District Court, Fergus County; Jack Briscoe, Judge.*

Action by Edmund B. Blinn and another against the Hutterische Society of Wolf Creek, a corporation, and others. From an order dissolving a temporary injunction, plaintiffs appeal. Affirmed.

*Messrs. Belden & De Kalb* and *Mr. Wm. M. Blackford,* for Respondents, submitted a brief; *Mr. H. Leonard De Kalb* and *Mr. Blackford* argued the cause orally.

The appellants were not entitled to an injunction upon the facts. The action is not one of trespass. There is no allegation of any threatened injury to the freehold, or that respondents are insolvent. There is not any showing that the threatened injury cannot be amply compensated in damages. The crops of wheat and rye are emblements,—*fructus industriales,*—and "are regarded and treated as chattels personal." (*Power Merc. Co.* v. *Moore Merc. Co.,* 55 Mont. 401, 177 Pac. 406.) Such being the facts, and we may say want of facts alleged, the appellants were not entitled to an injunction and the lower court properly dissolved it. (*Eisenhauer* v. *Quinn,* 36 Mont. 368, 122 Am. St. Rep. 370, 14 L. R. A. (n. s.) 435, 93 Pac. 38; *Kaufman* v. *City of Butte,* 48 Mont. 400, 138 Pac. 770; *Donovan* v. *McDevitt,* 36 Mont. 61, 92 Pac. 49.)

It is manifest all through the evidence that the respondent society was recognized by appellants at all times as the tenant

of these lands until they conceived the idea in the late spring of this present year of appropriating the wheat and rye crops to their own use. At this time they forcibly entered upon a portion of the leased lands in the possession of said respondent, and proceeded against its earnest protests to disc out. a portion of the wheat and rye.

The reservation in the deed was unnecessary, for the lease term was provided for by the same instrument, pursuant to which the deed was made and delivered. It was a part of the same contract. The agreement for the lease is complete in every particular. The period of time for which it is to run, the names of the parties, the description of the land, what lands are to be cultivated to crops, and what used for pasturage, the terms and rental, provision for cancellation of lease by either party, settlement in event of cancellation, are all stated in exact detail. The entering into of the formal lease instrument was unnecessary, especially when the society was' in possession of the leased premises by and with the knowledge and consent of the appellants and their co-owners and by them recognized as tenants from the time of the delivery of the sale and lease contract, and the society proceeded immediately in the performance of the lease terms. The minds of the parties had fully met in the contract signed and delivered. The lease which had been entered into upon the delivery of this contract could have served no other purpose than as evidence of the tenancy, and this was provided for explicitly in the contract itself. (*Long* v. *Needham*, 37 Mont. 408, 423, 96 Pac. 731; 5 Current Law, 666; *Pratt* v. *Hudson River R. R. Co.*, 21 N. Y. 305; *Sanders* v. *Pottlitzer Bros. Fruit Co.*, 144 N. Y. 209, 43 Am. St. Rep. 757, 29 L. R. A. 431, 39 N. E. 75; *Post* v. *Davis,* 7 Kan. App. 217, 52 Pac. 903, 904; *Alexandria Billiard Co.* v. *Miloslowsky*, 167 Iowa, 395, 149 N. W. 504.)

When the society continued in possession of the premises covered by the lease agreement, and under that agreement, by and with the knowledge and consent of the appellants, a tenancy was created. (*Cheney* v. *Newberry*, 67 Cal. 125, 7 Pac. 444; *Neppach* v. *Jordan*, 15 Or. 308, 14 Pac. 353; 24 Cyc.

p. 884e; *Schlicht* v. *Callicott,* 76 Miss. 487, 24 South. 869; *Pugh Printing Co.* v. *Dexter,* 8 Ohio S. & C. Pl. Dec. 57.)

The authorities cited by appellants upon the question that as there was no reservation of the crops in the deed to appellants' agent, Greenwood, that the crops belonged to appellants, are not applicable to the instant case, for the reason that a tenancy was created under a contract of sale of the lands on which the crops were grown. Appellants' authorities cited apply to an absolute sale and transfer of the real property, free from any tenancy in the vendor and grantor.

If the lease contract had been entered into with one out of possession of the leased premises, and that party had never taken possession by and with the consent of the appellants and their co-owner, then the authorities cited by appellants upon the question that a contract for a lease vests no estate in a proposed tenant, and does not create the relation of landlord and tenant, would be applicable, but they are not applicable to the instant case when the society continued in possession of the leased premises by and with the knowledge and consent of the appellants and co-owners, and was then and thereafter recognized and continued to be recognized as tenant, and as such tenant proceeded to and did perform the terms of the lease agreement.

The crops for the ensuing year 1920, which had been seeded on the leased lands prior to the time of entering into the lease contract, passed under the terms of the lease agreement to the society, since they were not reserved by appellants. (*Emery* v. *Fugina,* 68 Wis. 505, 32 N. W. 236; *Martin* v. *Knapp,* 57 Iowa, 336, 10 N. W. 721; *Edwards* v. *Perkins,* 7 Or. 149; *Tuttle* v. *Langley,* 68 N. H. 464, 39 Atl. 488; *Hosli* v. *Yokel,* 57 Mo. App. 622; 28 Cyc. 1071(e).)

*Mr. T. F. McCue* and *Mr. William J. Carr,* the latter of the Bar of Los Angeles, California, of Counsel for Appellants, submitted a brief, as well as one in reply to brief of Respondents; *Mr. Cue* argued the cause orally.

The record shows that the plaintiffs are the owners of the land. It follows as a legal presumption that they are, and

were during 'all times mentioned in this controversy, owners of the crops. (*Webster* v. *Sherman*, 33 Mont. 448, 458, 84 Pac. 878; 12 Cyc. 976; *Ellestad* v. *Northwestern Elevator Co.*, 6 N. D. 88, 69 N. W. 44.)

The executory contract between the Hutterische Society and D. S. Greenwood is merged in the deed that was executed by the society on January 16, 1920. The contract thereby became *functus officio*. (*Bryan* v. *Swain*, 56 Cal. 616; *Keator* v. *Colorado Coal etc. Co.*, 3 Colo. App. 188, 32 Pac. 857; *Davenport* v. *Whisler*, 46 Iowa, 287; *Thwing* v. *Davison*, 33 Minn. 186, 22 N. W. 293; *Wilson* v. *Randall*, 67 N. Y. 338.)

The defendants admitted and the record shows that there was no reservation of the crops in controversy in the deed, and as a matter of law the deed passed the title of the crops to the grantee Greenwood. In order for defendants to have any interest in the crops, they would have to show they were expressly reserved in the deed. (*Power Mercantile Co.* v. *Moore Mercantile Co.*, 55 Mont. 401, 408, 177 Pac. 406; *Fiske* v. *Soule*, 87 Cal. 313, 25 Pac. 430; *Garanflo* v. *Cooley*, 33 Kan. 137, 5 Pac. 766; *Coman* v. *Thompson*, 47 Mich. 22, 41 Am. Rep. 706, 10 N. W. 62; *Erickson* v. *Paterson*, 47 Minn. 525, 50 N. W. 699.)

A contract for a lease that is never executed or carried out gives no title to the lessee to crops raised by another upon the land proposed to be demised. In order for the defendants to succeed in this case, under the admitted facts in the record, the burden was on them to show title to the crops, and as there was no evidence in the entire record showing any title to the crops in controversy in the defendants, they were properly enjoined from harvesting or in any manner converting same to their own use; consequently the temporary injunction issued by the district court was erroneously dissolved, as there was no evidence to sustain any title to said crops in any of the defendants.

The provision in the executory contract is only an agreement to enter into a lease between the parties and amounts to an agreement to enter into a lease in writing. A mere contract for a lease vests no estate and does not create the

relation of landlord and tenant. (*Potter* v. *Mercer,* 53 Cal. 667; *People* v. *Gillis,* 24 Wend. (N. Y.) 201; *Jackson* v. *Delacroix,* 2 Wend. (N. Y.) 433; *McGrath* v. *City of Boston,* 103 Mass. 369.) "An agreement for a lease vests no estate in the proposed lessee although an action for its breach may be maintained by the other party against the one in default." (*Harrison* v. *Parmer,* 76 Ala. 157, 24 Cyc. 899; *Pittsburgh Amusement Co.* v. *Ferguson,* 100 App. Div. 453, 91 N. Y. Supp. 666.)

When the defendant society removed from the premises to South Dakota, taking with them their farm implements, machinery and personal property, and without tilling or cultivating the land during the growing season of 1920, the same constituted an abandonment and a forfeiture of their rights in the premises, and when the plaintiffs, as the evidence shows, took full possession of the premises the latter part of April and farmed it, it was a re-entry by the latter, which constituted a termination of any rights the defendants might have had in the premises. (*Myer* v. *Roberts,* 50 Or. 81, 126 Am. St. Rep. 733, 15 Ann. Cas. 1031, 12 L. R. A. (n. s.) 194, 89 Pac. 1051, 1052; Am. & Eng. Ency. of Law, 2d ed., 319; Taylor on Landlord and Tenant, sec. 535; *Samson* v. *Rose,* 65 N. Y. 411.)

The so-called agreement for a lease was not a mutual contract whereby one party agreed to lease and the other to accept a lease. It was a mere option for a lease. The society itself was under no obligation whatsoever. It could accept a lease or not, as it saw fit. In this the agreement differs fundamentally from the agreements considered in such cases as *Long* v. *Needham,* 37 Mont. 408, 423, 96 Pac. 731; *Pratt* v. *Hudson River R. R. Co.,* 21 N. Y. 305; *Sanders* v. *Pottlitzer Bros. Fruit Co.,* 144 N. Y. 209, 43 Am. St. Rep. 757, 29 L. R. A. 431, 39 N. E. 75; and *Post* v. *Davis,* 7 Kan. App. 217, 52 Pac. 903, 904, cited by respondents, and in which the obligations of the parties were mutual and fixed.

The law is clear that in order for the respondent society to bring itself within the exception to the rule that such an agreement as this creates no tenancy and to establish a tenancy upon the same terms and obligations as though a lease

had, in fact, been made, it must show: (a) Entry under the agreement for a lease; and (b) That both parties treated and recognized the agreement for a lease as a present lease. This obviously must be so, for a party could not consistently ask a court to give an effect to the agreement, not expressed in its terms, which neither of the parties had given it and which was contrary to the assumed position of each; and (c) That the respondents have fully complied with all of the obligations that would have been imposed upon them if a lease had, in fact, been made. This, too, obviously must be so, for otherwise a party would be permitted to secure the benefits of the contract without performing the corresponding obligations.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On the day that this action was commenced, the affidavit of D. S Greenwood was filed on behalf of the plaintiffs, and thereafter, on the complaint and that affidavit and without notice to the defendants, an injunction was issued restraining the defendants, their agents and employees, from entering upon the lands described in the complaint, and from harvesting, threshing or removing the crops of fall wheat and rye, and from interfering in any manner with the plaintiffs in their use and occupation of the lands. Immediately upon service of the injunction and before answer was made, or required to be made, the defendants appeared specially, and moved the court to dissolve the injunction. A hearing was had, documentary evidence and oral testimony introduced by the respective parties, and at the conclusion of the hearing an order was entered by the court dissolving the injunction, and plaintiffs appealed.

Upon the hearing these facts were established without controversy: On October 7, 1919, the defendant Hutterische Society, a corporation, and D. S. Greenwood, entered into a contract in writing, by the terms of which the society agreed to sell and convey to Greenwood certain lands, and to assign and transfer to him certain contracts for the purchase of addi-

tional lands.   The lands were all particularly described by
government subdivisions, and comprised approximately 10,000
acres located in Fergus county.   The contract provided further
that upon its execution Greenwood should lease to the society
certain of the lands, particularly described, the farming lands
for a crop rental of one-third delivered in the elevator, and the
grazing lands for a cash rental of $1,500 per annum, the first
annual payment to be made on or before November 1, 1920.
A limitation upon the duration of the lease was fixed, and
the conditions and circumstances under which either party
might terminate the lease before the expiration of the term
were set forth in detail.   The formal lease was never executed.

At the time the contract was signed on October 7, 1919,
large areas of the land had been seeded to fall wheat by the
society, and upon other large areas fall rye was growing.   On
January 16, 1920, the society conveyed the lands first men-
tioned above to Greenwood by quitclaim deed.   These lands
had been held by the society for the use and benefit of its
members in Fergus county, who composed a colony of Menno-
nites.   The number of persons in the colony is not given; but
some time during the winter following, or in the early spring
of 1920, all members, excepting defendant Stahl, the manag-
ing agent of the society, and defendant Walters and his
family, removed to South Dakota, taking with them most of
the livestock and farming utensils.

About April 23, 1920, Greenwood went upon and plowed
up portions of the lands which had been in fall wheat and
rye, and reseeded the same to spring crops, and thereafter
plowed and planted other portions of the farming lands which
were to be included in the lease, and relet to third parties
still other portions to be summer fallowed.   About June 15,
1920, Greenwood conveyed to these plaintiffs all the lands
which had been conveyed to him by the deed of January 16.
When the fall wheat and rye were about to mature in the
summer of 1920, plaintiffs and the society respectively pre-
pared to harvest the crops.   The society's agent first com-
menced the actual work of harvesting, and plaintiffs instituted
this action and secured the injunction.   It is conceded that

all of the rye, and at least part, if not all, of the wheat, were produced upon the lands which were to be included in the lease.

In addition to these facts, established without controversy, the court had before it upon the hearing evidence introduced by the plaintiffs which tended to prove that the rye was a volunteer crop; that the crops upon the ground reseeded had been winter-killed to such extent that good husbandry required that the ground be reseeded to spring crops; that the society had not done anything toward reseeding, or preparing other portions of the lands for spring crops, and was not prepared to summer fallow the remaining portions. The court also had before it evidence, introduced by the defendants, which tended to prove that the fall rye had been planted by the society, and was not a volunteer crop; that after the contract of October 7, 1919, was signed, the society planted about 130 acres of the fall wheat now in controversy; that the right to receive the lease was a material part of the consideration passing to the society for the sale of the lands at the price agreed upon; that no part of the fall wheat or rye was winter-killed to such extent as to require that the ground be reseeded; that the society was in the actual and exclusive possession of all the lands mentioned on October 7, 1919, had been in such possession for several years previously, and continued in such possession of the lands to be included in the lease up to the time of the hearing, except that over their protests and objections, plaintiffs had plowed up and reseeded the ground heretofore referred to, and except, further, that by an executed oral agreement, entered into in the spring of 1920, Greenwood had taken over the grazing lands, and had released defendant society from the payment of the rental; and had relet the portion to be summer fallowed to third parties, and had released the society from doing that work; that defendants had made preparation to do all the work required to be done by the society, and had ample equipment for that purpose, or had contracted for the work to be done.

The court also had before it the complaint in this action which alleges that these defendants continued in the posses-

sion of the lands from the date of the deed—January 16, 1920 —to the date upon which the action was commenced, were then actually in possession, and threatened to continue, though it is alleged that their possession was unlawful. The court also had before it the affidavit of Greenwood, made on behalf of the plaintiffs, to the effect that he had read the complaint, "and that the matters therein stated are true."

It was peculiarly the province the district court to pass [1] upon the credibility of the witnesses and ascertain what were the facts. The general order dissolving the injunction is in effect a finding in favor of defendants upon all material matters in dispute, and is conclusive upon this court, since we cannot say that the evidence preponderates against such finding.

For the purpose of simplification, these plaintiffs will be treated as the purchasers under the contract of October 7, 1919, since it appears that Greenwood was acting for them in all his negotiations, and the society will be treated as sole defendant, since it is apparent that Stahl and Walters are nominal parties only, joined in this action because they were the representatives of the society actually upon the lands when this action was commenced.

Upon the facts found, this case was presented to the lower court: The plaintiffs, purchasers, never were in the actual or exclusive possession of the lands to be covered by the lease. The society, the vendor, was in actual and exclusive possession when it planted the crops in controversy and continued in possession of the lands upon which those crops were growing until the injunction was issued and served. The practical [2] effect of the injunction as issued was to oust the society from its possession and install the plaintiffs in possession, and for such a purpose injunction is not an available remedy. (*Lacassagne* v. *Chapuis,* 144 U. S. 119, 36 L. Ed. 368, 12 Sup. Ct. Rep. 659; *Black* v. *Jackson,* 177 U. S. 349, 44 L. Ed. 801, 20 Sup. Ct. Rep. 648 [see, also, Rose's U. S. Notes]; *Yellow Pine Export Co.* v. *Sutherland-Innis Co.,* 141 Ala. 664, 37 South. 922; *Hall* v. *Henniger,* 145 Iowa, 230, 139 Am. St. Rep. 412, 121 N. W. 6; *State Road Bridge Co.* v. *Circuit Judge,*

143 Mich. 337, 106 N. W. 394; *Stout* v. *Williams,* 203 Pa. 161, 52 Atl. 169.)

Counsel for plaintiffs, who were not of counsel at the time of the hearing, insist that plaintiffs secured possession when they went upon the land to do the reseeding and other work, and continued their possession thereafter until ousted by the society, when it commenced harvesting the crops, and, as we understand their contention, it is that the case made is one of threatened destruction of plaintiffs' property by a willful trespasser, unable to respond in damages, and is within the rule recognized in *Lee* v. *Watson,* 15 Mont. 228, 38 Pac. 1077, and *City of Bozeman* v. *Bohart,* 42 Mont. 290, 112 Pac. 388. In so far as that contention involves the assumption that defendant society was ever out of possession, it is irreconcilable with the allegations of the complaint referred to above. We are not disposed to be hypercritical, however, and shall review the several other contentions presented in appellants' brief.

It is urged that the relation of landlord and tenant never existed between the plaintiffs and the society, but that position cannot be maintained for three reasons: (1) If the contract [3] of October 7, 1919, contained the terms which were to be included in the lease, a valid, enforceable lease was thereby created, even though the parties contemplated that their agreement should be reduced to a more formal document (*Long* v. *Needham,* 37 Mont. 408, 96 Pac. 731), and, so far as disclosed by this record, the contract for a lease did comprehend all that the parties intended to include in the lease. The suggestion now made by appellants that the contract of October 7, 1919, provides only for an option for a lease cannot be urged seriously. The agreement for a lease is bilateral, and its obligations reciprocal. (2) The parties treated the contract as [4] though it created the relationship of landlord and tenant. In construing the provision for a lease the courts will look to the practical construction given it by the parties themselves, rather than to the particular phraseology employed. (*Helena L. & Ry. Co.* v. *Northern Pac. Ry. Co.,* 57 Mont. 93, 186 Pac. 702.) The society was insisting at all times that it was right-

fully in possession, and was claiming the crops in controversy, and it is only upon the theory that it was a tenant that such claims could be made.  On the other hand, Greenwood testified to numerous conversations which he had with Stahl during the early spring of 1920, all relating to the obligations imposed upon the society, and in that connection, among other things, he testified that he recognized the right of the society to a lease according to the terms set forth in the contract of October 7, 1919, until he saw that it was not going to farm the land as it had agreed to do, and that in March or April, 1920, he told Stahl that he would prefer to have the pasture lands to run his own stock upon, if Stahl would let him have them, and, if the society wanted to be released from its obligation to pay rent for such lands, it must complete the other term of the lease, viz., cultivate the farming lands.  If the relation of landlord and tenant did not then exist between them, the society owed to plaintiffs no duty whatever to farm the lands or do any other work upon them, had no interest in the pasture lands to surrender, and owed no rental from which it could be released.  (3) Assuming that the trial court found [5] the facts to be as indicated by the undisputed evidence and the testimony introduced by the society, the society was at least a tenant at will.  (*Power Mercantile Co.* v. *Moore Mer. Co.*, 55 Mont. 401, 177 Pac. 406.)  It is not made certain by the contract of October 7, 1919, that the society was called upon to do any work, other than the work it had done and the work it was undertaking to do when restrained by the injunction.

Again, it is contended that the entire contract of October 7, 1919, was merged in the deed of January 16, 1920, and that any right which the society had to lease was conveyed or surrendered.  The deed referred to was not introduced in evidence, is not before us, and is not subject to construction upon this appeal; but that it was never the intention of the parties that the deed should have such effect is demonstrated by the evidence just recited above, and by other evidence of a similar character.  As late as April 13, 1920, Greenwood wrote to Mr. Johnson of Lewistown, who then had some interest in the

property with plaintiffs, and, referring to a conversation which he had with Stahl on the day previously, among other things, said: "I will draw up a lease contract that will cover all the points that a lease should contain and as agreed upon at the time the purchase of the land was made, and I am sure the Mennonites will not sign it, as they will not bind themselves to do anything," *etc.*

Finally, it is contended that it cannot be determined from [6-7] the evidence whether all of the fall wheat in controversy, 550 acres, was produced upon the lands to be included in the lease, and therefore the court erred in dissolving the injunction, and should have modified it and continued it in force to protect plaintiffs in the possession of the lands not to be included in the lease, and the crops produced upon them.

Upon the hearing, plaintiffs assumed the burden of proof, and, in addition to the proof necessary to establish the fact that they were the owners of the land in fee, offered evidence to prove, and undertook to prove, that the society was not en- [8] titled to possession under the contract of October 7, 1919. In other words, they assumed the burden of proving that they were entitled to the injunction which had been issued at their instance and request. Having voluntarily adopted that theory in the trial court, they will not be heard on appeal to urge a different one, and could not do so successfully. On motion to dissolve an injunction before trial upon the merits, the question before the court is whether upon all the facts disclosed at the hearing the court should have granted the injunction in the first instance. (*Lawrence* v. *Lawrence* (Sup.), 172 N. Y. Supp. 146.) If the evidence leaves it uncertain whether any portion of the wheat in controversy was produced upon lands which were not to be included in the lease, the plaintiffs are responsible for the uncertainty under the theory upon which the hearing proceeded.

Upon this appeal we have assumed, without deciding, that the complaint states a cause of action in ejectment, and that the Greenwood affidavit is sufficient to warrant the trial court acting upon the *ex parte* application for an injunction. It was [9] not the province of the district court, and it is not the

province of this court, to determine finally any matter which may arise upon a trial of the merits. These observations are to be understood only as reflecting our views upon the question of plain-, tiffs' right to an injunction as disclosed by the evidence presented at the hearing.

The order dissolving the injunction is affirmed, and the order of this court, continuing the injunction in force until the hearing and determination of this appeal, is vacated.

*Affirmed.*

Mr. Chief Justice Brantly and Associate Justices Hurly, Matthews and Cooper concur.