WILLIAMS, RESPONDENT, *v.* NEAL ET AL., APPELLANTS.

(No. 6,387.)

(Submitted October 5, 1928. Decided October 25, 1928.)

· [271 Pac. 455.]

*Mr. P. F. Leonard,* for Appellants, submitted a brief and argued the cause orally.

*Mr. George W. Farr,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

In March, 1928, George T. Williams commenced an action against E. L. Neal and Josephine Neal, husband and wife, for the cancellation of a certain lease on a stall in a garage situated on the rear of his residence property in Miles City, on the ground of alleged fraud and misrepresentation in obtaining the lease and the failure of the consideration therefor. At the same time he secured the issuance of an order to show cause why a temporary restraining order should not be issued. A hearing was duly had on the order to show cause, and, at the close thereof, the court issued an "injunction order" restraining defendants from trespassing upon any portion of plaintiff's property not included in a driveway mentioned. The order permits the continued use of the stall, provided it can be used without trespass. From this order the defendants have appealed.

By specifications, not numbered as required by the rules of this court, defendants assert that the court erred in making the order; that there is no evidence to sustain it; and that the order is void in that it permits the defendants to use the stall "but prevents them from getting to the garage."

The record made on the hearing discloses the following facts: Defendants originally owned all of lots 1, 2, 3

and 4 in a certain city block, title being of record in the name of Josephine Neal. These lots were 25 feet wide each; they fronted on Jordan Street and extended east 123 feet to an alley; lot 1 is bounded on the north by Bridge Street; improvements thereon consist of a dwelling-house on the west 88 feet facing Jordan Street, with an artesian well at the rear end, and, on the east 35 feet, a dwelling-house facing Bridge Street, and a two-car garage standing on the southeast corner of lot 4, with doors opening to the north.

On August 18, 1927, E. L. Neal, acting for his wife, negotiated a sale of the east 35 feet of the lots, with the improvements thereon, to Williams at the agreed price of $3,000. Mrs. Neal was willing to sell, provided she could reserve the use of a stall in the garage mentioned. On August 19, Neal, in company with Williams and Mrs. Williams, went to the office of his attorney, P. F. Leonard, and there, for the first time, mentioned the reservation of the stall in the garage, and it was agreed that the matter would be arranged by the exchange of the use of one-half of the garage for the use of water from the artesian well, the method of effecting a transfer being left to Leonard. Leonard drew a deed conveying the property sold, but reserving to the grantor an easement over the west 5 feet of the east 35 feet of lots 1, 2 and 3, and granting to the second party an easement over the adjoining 5-foot strip, thus providing for a joint driveway from Bridge Street to the north line of lot 4. Leonard then prepared two leases, each reciting a consideration of $1 and each to run for a term of 25 years. One lease granted to Williams the use, in common with Mrs. Neal, of the waters of the artesian well; the other, as it appears as an exhibit, granted to Mrs. Neal the use of the west half or stall "of the garage to be placed and located on the northwest corner of the east 35 feet of lot numbered 4," and recited that "a mutual driveway or easement has been agreed upon leading to the said garage."

This disposition of the property was satisfactory to both Williams and Neal, but the former stated that he would not

be able to move the garage until spring, and the latter consented to the delay, stating that he had an old Ford and did not then "care about the garage," and that "if he wanted to use the garage he would use it by way of the alley." Mrs. Neal was then called in, and the three instruments were executed and delivered. The Neal family continued, however, to use the stall in the garage by driving across plaintiff's back yard either from the mutual driveway established or from the alley, and this was done without protest by plaintiff until the month of November, and although plaintiff testified that he did order defendants in November to cease using the garage, and in March, 1928, served written notice to that effect on them, they evidently continued to so use the garage up to the time the order herein was issued.

Plaintiff testified that in November he measured the garage and found that it was 18 feet square, instead of 16 feet square, as E. L. Neal had said, and that the space between the southwest corner of the house and the west line of his lot was but 13 feet wide, instead of 15 feet wide, as represented by Neal, and it was, consequently, impossible to move the garage to the agreed location, his contention being that the agreement was that the garage be placed on the northwest corner of lot 3 and that the lease had been erroneously drawn or thereafter changed to read "lot numbered 4."

His contention is further that at the time the agreement was reached the parties did not know whether his house extended only to the south line of lot 2 or across that line on to lot 3, and that the original agreement as to the driveway was that it was to extend only across lots 1 and 2, but because of the above uncertainty, the driveway was extended to include lot 3 in order to avoid the danger of leaving a space between the end of the drive and the doors of the garage when moved.

Plaintiff further testified, as did his wife, that Neal represented that a pipe projecting into the cellar of the house purchased was connected with the artesian well and that

the water thereof could be used merely by placing a pump on the pipe, but that when he purchased a pump and installed it they got no water, and then discovered that there was no connection between the pipe and the well. Plaintiff alleged and stated that all of the representations referred to were false and known to be so by Neal; that he had confidence in Neal, believed and relied upon the representations made by him, and would not have made the exchange embodied in the two leases had he known the facts.

The evidence tended to show that the manner in which members of the Neal family drove their car across plaintiff's lot endangered the lives and limbs of plaintiff's small children while at play thereon, and that the car tore up the sod and rutted the surface of the lot.

1. Much of the testimony adduced was directed toward the issues to be determined in the trial of the main action, and much thereof was disputed by defendants. We do not presume to intimate how those issues shall finally be determined, but it must be remembered that the order from which the appeal is taken is but a temporary injunction, effective only until the final determination of the main action. On the hearing had it was not within the province of the trial court, and it is not within the province of this court now, to determine finally any of the matters which may arise upon the trial of the merits of the case (*Blinn* v. *Hutterische Society*, 58 Mont. 542, 194 Pac. 140); however, the issue in the main action is as to whether the lease in question should be canceled, while, on the hearing, the issue was as to whether defendants had a right, under the lease, to drive across any portion of plaintiff's land, other than that contained in the driveway established by the deed, and our office is to determine whether the trial court's action can be sustained under the facts and under the authorities.

2. As Mr. Justice Galen, speaking for this court, declared in *Atkinson* v. *Roosevelt County*, 66 Mont. 411, 214 Pac. 74: "It is a well-settled rule in this state that the allowance of a temporary injunction is vested largely in the sound

250

legal discretion of the district court, with the exercise of which this court will not interfere except in instances of manifest abuse,"—and it has been declared by this court that injunctive relief may be granted to prevent a multiplicity of actions at law for damages which would be caused by the commission of continued and repeated trespass threatened (*Wheeler* v. *McIntyre,* 55 Mont. 295, 175 Pac. 892); the injury in such cases is "irreparable" where it is not susceptible of complete pecuniary compensation and cannot be estimated in money (*Hahn* v. *Shaubut,* 45 Mont. 326, 123 Pac. 694).

Herein the threat of continuing trespass, if the acts of defendants constitute trespass, is admitted, as defendants assert their right to continue to drive across the lot in question as they have heretofore done, and the injury which the evidence tends to show, falls within the rule last declared.

3. Defendants, however, contend that they were not trespassers, but tenants in possession, under the construction placed upon the lease by the parties and that injunction is not an available remedy to oust a tenant and place the landlord in possession. In support of this contention, counsel relies upon expressions found in *Blinn* v. *Hutterische Society,* above. In the *Blinn Case* no question of trespass was involved; the defendant was in possession of lands under an agreement to lease and under such circumstances as would warrant an oral lease; the parties treated the agreement as a lease, and the court held that the defendant was at least a tenant at will; while here the defendants held a written lease which the law required to be in writing (sec. 7519, subd. 5, Rev. Codes 1921), which expressly provides for the use of the garage when moved to the location described, and which is barren of any intimation that the lessee has a right to use the garage in its present position until it shall be moved, or to drive across any portion of plaintiff's lot other than across the driveway established by the deed.

If we deem the conversation had at the time plaintiff stated he could not move the garage until spring as an agree-

ment that defendants should use it until spring in its present position, that evidence was an attempt to vary the terms of a written instrument by parol, and even if that agreement was made and could be upheld, it confined defendants to entry by way of the alley.

Again, if defendants were tenants at will, or licensees, by reason of plaintiff's failure to object to their acts, there was no consideration for their use of the premises; the permission was revocable and was revoked by plaintiff's withdrawal of permission. (*Waddell* v. *School District,* 74 Mont. 91, 238 Pac. 884.)

Defendants' remedy, if plaintiff did not comply with the terms of the lease, was not to force their way to the garage, but to compel plaintiff to move it.

4. Counsel further contends that defendants had a right to use the garage in its present position by reason of the rule laid down in *Wheeler* v. *McIntyre,* above, that a lease carries with it a demise of the land on which the building stands, and the further rule, supported by numerous statutory provisions and decisions of this court, that where leased lands are so situated as to be inaccessible to the lessee without crossing other lands of the lessor, a right of way of necessity attaches to such other lands.

The first rule quoted by counsel is, by the decision cited, restricted by the clause "unless the contrary intention is manifested"; herein the lease under consideration clearly manifests the intention of the parties that the garage be moved to a new location, and, therefore, that the land on which the garage now stands should not be demised. The rule stated would apply, not to the present location, but to that location to which the garage is to be moved. Likewise the rule as to a way of necessity by implication is inapplicable, unless defendants were entitled to use the garage in its present location, as the lease is not silent as to a means of ingress and egress but specifically provides an adequate driveway to the entrance of the garage as it shall be placed under the conditions of the lease.

While, under the showing made, the court might possibly have permitted the defendants to use the garage by entry by way of the alley, there is no showing that the plaintiff agreed to the suggestion of Neal that ''if'' he used the garage he would do so by way of the alley, or that, if he did so agree originally, he was not justified in withdrawing his consent, and the meager testimony on the subject is so vague and the proposed use so problematical that, on the whole record, we cannot say that the court manifestly abused its discretion in making the order from which this appeal is taken; this is especially so in light of the fact that it appears from the record that the defendants could not be materially injured or greatly inconvenienced by the order, while, in the absence of the order, great and irreparable injury might result to plaintiff and his family.

For the reasons stated, the order appealed from is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES STARK and GALEN concur.

MR. CHIEF JUSTICE CALLAWAY and MR. JUSTICE MYERS not sitting.